## No. 26372

Ferrari, S.p.A. SEFAC, an Italian corporation v. The District Court of the City and County of Denver and the Honorable Robert E. McLean, Judge thereof

(522 P.2d 105)

Decided May 20, 1974.

Weller, Friedrich, Hickisch & Hazlitt, Arthur H. Downey, for petitioner.

Kenneth N. Kripke, for respondents.

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an original proceeding in the nature of prohibition questioning the jurisdiction of the trial court. The administrator and widow brought action against the petitioner to recover in excess of $2,000,000 in damages by reason of death resulting from an allegedly defective product. Service of process was made upon petitioner in New Jersey. The sole issue is whether the court obtained jurisdiction over the petitioner under the "long-arm" statute. 1965 Perm. Supp., C.R.S. 1963, 37-1-26 and 27. We rule that it did not obtain jurisdiction.

On July 27, 1972, the decedent, Dr. Arthur Shuldberg, was driving an automobile which had been manufactured by the petitioner. Dr. Shuldberg had received the car in Reno, Nevada, and was to deliver it to LeMans Motors in Denver, Colorado. While still in Nevada, there was a collision in which Dr. Shuldberg sustained head injuries. He was brought to Colorado and died here as a result of these injuries on August 29, 1972.[1] It was alleged that the head restraint on the seat of the car occupied by the deceased became detached due to defective design, construction or assembly, and that as a result his head struck an object in the vehicle.

The petitioner is an Italian corporation, manufacturing its automobiles in Italy. All of its vehicles eventually sold at retail in the United States are initially sold outright by petitioner to one of two or three corporations in this country. One of these is Modern Classic Motors in Reno, Nevada. Modern Classic had entered into a dealer franchise agreement with LeMans Motors of Denver under which Modern Classics sold Ferraris to LeMans. LeMans advertised itself as an authorized Ferrari dealer and as providing authorized service for Ferraris. At times LeMans corresponded directly with petitioner in Italy to obtain shipment of parts. These were sent to Modern Classic who forwarded the parts to LeMans.

The petitioner answered interrogatories as follows: That it distributes automobiles only in the sense that it sells automobiles manufactured and assembled by it to purchasers who take title in Italy; that LeMans Motors was the only Ferrari dealer in Colorado; that petitioner did not maintain the right to approve, reject, veto, terminate or in any way affect the selection or continuation of dealerships in Colorado; that petitioner does not require Ferrari dealers in Colorado to meet or set any standards with respect to service departments, warranties or guarantees of their product; that petitioner has not maintained factory representatives in, nor sent them into, Colorado; that Ferraris were sold outright to

---

[1] There has been no finding as to these facts. They were pleaded in the complaint and for the purpose of this case we assume them to be true.

certain United States corporations (Modern Classic for western United States); that these purchasers were independent contractors engaged in the business, *inter alia,* of reselling such vehicles at retail or distributing them at wholesale to retail dealers appointed by such United States corporations; that petitioner has never advertised its products in the United States; and that petitioner had no control over Modern Classic's appointment of LeMans as a dealer.

The respondents (as the alter ego of the plaintiffs in the damage action) argue that the petitioner was subject to service of process under the "long-arm" statute for two reasons: (1) A tortious act was committed in Colorado; and (2) the petitioner transacted business in Colorado sufficient to make it subject to service of process under the statute.

## I.

The respondents contend that the tortious act was committed in Colorado because Dr. Shuldberg's heirs are residents of Colorado, his estate is being probated here, the plaintiffs in the suit desire to litigate the case here, and Dr. Shuldberg died in Colorado. We do not agree.

This is not a matter of determining whether *lex loci delicti* or *lex fori* shall apply as was the case in *First National Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973). The question is whether the petitioner has minimum contacts in Colorado in order to meet due process requirements and not offend traditional notions of fair play and substantial justice. This was not involved in *Rostek. Safari Outfitters v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968); *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). The facts that the heirs are residents, that the estate is being probated in Colorado and that the plaintiffs in the suit desire to litigate here are irrelevant to the sufficiency of the petitioner's contacts.

We hold that the fact that Dr. Shuldberg died in Colorado does not constitute a "tortious act." The respondents have no doubt that, had the accident occurred in Colorado, that fact would constitute a tortious act in this state, citing

*Vandermee v. District Court,* 164 Colo. 117, 433 P.2d 335 (1967); *Czarnick v. District Court,* 175 Colo. 482, 488 P.2d 562 (1971); and *Texair Flyers, Inc. v. District Court,* 180 Colo. 433, 506 P.2d 367 (1973). For the purposes of this case we will assume the correctness of the proposition asserted by the respondents.

Each of the three Colorado cases last mentioned cite *Gray v. American Radiator & Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961), and the first of these *(Vandermee)* is predicated upon *Gray.* In *Gray* it was said:

"The wrong in the case at bar did not originate in the conduct of a servant physically present here, but arose instead from acts performed at the place of manufacture. Only the consequences occurred in Illinois. It is well established, however, that in law the place of a wrong is where the last event takes place which is necessary to render the actor liable. Restatement, Conflict of Laws, sec. 377. A second indication that the place of injury is the determining factor is found in rules governing the time within which an action must be brought. In applying statutes of limitation our court has computed the period from the time when the injury is done."

██ Our statute of limitations relating to death cases commences with the time of the injury. C.R.S. 1963, 41-1-4. *See Fish v. Liley,* 120 Colo. 156, 208 P.2d 930 (1949).

While the death statute creates a new "cause of action" upon death *(Fish v. Liley, supra),* the initiating wrongful act is the same in each instance.

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the party injured." C.R.S. 1963, 41-1-2.

It was so held in *Denver and Rio Grande R.R. Co. v.*

*Frederic,* 57 Colo. 90, 140 P. 463 (1914). *See Hayes v. Williams,* 17 Colo. 465, 30 P. 352 (1892).

The "tortious act" was not at the place of death.

## II.

■ In arguing that petitioner transacted business in Colorado sufficient to make it subject to service of process under the the "long-arm" statute, respondents state:

"When Ferrari places its autos in the stream of international commerce, it knows good and well that those cars will be scattered over the globe and will not remain in the states or provinces in which the importers have headquarters. In the case of Colorado, Ferrari was well aware of the existence of a local dealer called LeMans Motors. LeMans had written them to discuss warranties and to order parts. Ferrari was also aware of the connection between LeMans and Modern Classic Motors because parts ordered by LeMans were sent to Reno for reshipment to Denver . . . .

"It would not be unfair in the least to require Ferrari to come to Colorado to defend this product which it knows will ultimately reach Colorado consumers."

This simply is not enough.

We have already related in the fourth and fifth paragraphs of this opinion the relationships — or, more exactly, the lack of relationship — between petitioner and Colorado. There is no need to repeat these facts. The requisite minimum contacts did not exist here. There was more contact in *Safari Outfitters v. Superior Court, supra,* than here, and there it was held that there was not sufficient contacts to satisfy due process. *Cf. Granite States Volkswagen v. District Court,* 177 Colo. 42, 492 P.2d 624 (1972), and *Geer Company v. District Court,* 172 Colo. 48, 469 P.2d 734 (1970). The petitioner had nothing to do with the selection, appointment, operations, and standards of the dealer in Colorado. It sold the car outright to a third person who took title in Italy. There simply is not a minimum contact.

Our rule to show cause is made absolute, and the respondents are directed to quash the service of process.

MR. CHIEF JUSTICE PRINGLE does not participate.