**CLASSIC AUTO SALES, INC., a Nebraska corporation, and Terry Kuehl, individually, Petitioners,**

**v.**

**Alan L. SCHOCKET, M.D., Respondent.**

**No. 91SC322.**

Supreme Court of Colorado,
En Banc.

July 7, 1992.

Otten, Johnson, Robinson, Neff & Rago-
netti, P.C., Thomas J. Ragonetti, Kenneth
K. Skogg, Denver, Zweiback, Hotz & Lam-
berty, P.C., Warren S. Zweiback, Omaha,
Neb., for petitioners.

Delap & Barry, P.C., Herbert A. Delap,
Denver, for respondent.

Justice LOHR delivered the Opinion of
the Court.

The issue before us is whether the defen-
dants are subject to the jurisdiction of the
courts of this state for the adjudication of
the tort claims alleged in the plaintiff's
complaint under the "commission of a tor-
tious act" provision of Colorado's long arm
statute. *See* § 13–1–124(1)(b), 6A C.R.S.
(1987). The district court held that they
are not and granted the defendants' motion
to dismiss. The Colorado Court of Appeals
reversed. *Schocket v. Classic Auto Sales,
Inc.*, 817 P.2d 561 (Colo.App.1991). We
conclude that the acts of the defendants
were sufficient to subject them to the juris-
diction of Colorado courts for the purpose
of this litigation, and therefore affirm the
judgment of the court of appeals.

## I.

The relevant facts are not in dispute for
the purpose of resolving the issue of per-
sonal jurisdiction.[1] In the fall of 1988,
Denver resident Alan L. Schocket pur-
chased two nationally-circulated magazines
in which Classic Auto Sales, Inc. had adver-
tised a 1968 Porsche 911S Targa automo-
bile for sale. After reading the advertise-
ments, Schocket made a telephone call to
Classic Auto Sales in Omaha, Nebraska,
and spoke with Terry Kuehl, the president
of Classic Auto Sales, who lives in Omaha.
Kuehl confirmed the information contained
in the advertisements.

Over the next few weeks Schocket and
Kuehl exchanged four or five telephone
calls in which they engaged in conversa-
tions regarding the vehicle. Schocket told
Kuehl that the reason he was interested in
the Porsche was the "911S modification,"
which made the vehicle desirable for
Schocket's intended purpose of road racing.
Schocket then traveled to Omaha and met
with Kuehl, who again stated that the ve-
hicle was a 911S Targa and reiterated that
representation in a written purchase con-
tract. Schocket relied on the defendants'
representations and paid Classic Auto Sales

---

1. The pertinent facts are derived from the veri-
fied complaint and the affidavit of defendant
Terence J. Kuehl, submitted in support of the
defendants' Motion to Quash Summonses and
Dismiss Complaint.

nine thousand dollars by check to purchase the Porsche. Schocket then drove the vehicle back to Denver.

Several months later, Schocket took the Porsche to a mechanic to prepare it for use. The mechanic advised him that the engine in the vehicle was not a 911S Targa engine. After confirming this information by correspondence with the manufacturer, Schocket commenced this action against Classic Auto Sales and Kuehl in Denver District Court, asserting claims for fraud, concealment, negligent misrepresentation, and deceptive trade practices in violation of section 6–1–105, 2 C.R.S. (1973).

Each of the defendants was served with a summons and a copy of the complaint in Nebraska. They filed a joint motion pursuant to C.R.C.P. 12(b) to quash the summonses and dismiss the complaint, asserting that the court lacked personal jurisdiction over them. Schocket responded, relying on the provision of the Colorado long arm statute that provides for personal jurisdiction over persons who commit a tortious act within this state. *See* § 13–1–124(1)(b), 6A C.R.S. (1987).[2] The district court granted the motion, holding that the defendants did not have sufficient minimum contacts with Colorado to subject them to the jurisdiction of Colorado courts consistent with traditional notions of fair play. On appeal, a divided panel of the Colorado Court of Appeals reversed. Classic Auto Sales and Kuehl petitioned for certiorari, and we granted the petition.

## II.

Schocket relies for jurisdiction upon section 13–1–124(1)(b), 6A C.R.S. (1987), a subsection of the Colorado long arm statute, which provides in pertinent part:

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person ... to the jurisdiction of the

courts of this state concerning any cause of action arising from:

> . . . .
>
> (b) The commission of a tortious act within this state;

We have frequently held that the long arm statute extends the jurisdiction of Colorado courts to the fullest extent permitted by the due process clauses of the United States and Colorado Constitutions. *E.g., McAvoy v. District Court,* 757 P.2d 633, 634 (Colo.1988); *Fleet Leasing, Inc. v. District Court,* 649 P.2d 1074, 1078 (Colo. 1982). Nevertheless, our mode of analysis typically has involved two steps. First, we have determined whether the act or acts relied on to support jurisdiction fall within one of the subsections of the long arm statute. Then, we have analyzed separately whether the exercise of jurisdiction would comport with due process. *See, e.g., Fleet Leasing.* We employ this two-step analysis here. Finally, we address the case of *Ferrari v. District Court,* 185 Colo. 136, 522 P.2d 105 (1974), upon which the defendants rely, and disapprove the language upon which they ground their reliance.

## III.

The first inquiry is whether the complaint alleges "[t]he commission of a tortious act within this state." *See* § 13–1–124(1)(b). In *D & D Fuller CATV Const., Inc. v. Pace,* 780 P.2d 520, 524 (Colo.1989), we stated that the term "tortious act" as used in the long arm statute "implies the total act embodying both the cause and its effect." *Accord Vandermee v. District Court,* 164 Colo. 117, 122, 433 P.2d 335, 337 (1967). In order to satisfy the statutory standard for assertion of long arm jurisdiction, however, it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado. Instead, we have held the statute to be satisfied when only the resulting injury occurs in this state. *E.g., McAvoy,* 757 P.2d at 635; *Le Manufacture Francaise v. District Court,* 620 P.2d

---

**2.** In the complaint, Schocket asserted personal jurisdiction on the additional basis that the defendants were transacting business within Colorado. *See* § 13–1–124(1)(a), 6A C.R.S. (1987).

He did not rely on this ground in defending against the motion to quash in the district court and has not done so in the court of appeals or here.

1040, 1044 (Colo.1980); *Jenner & Block v. District Court,* 197 Colo. 184, 186, 590 P.2d 964, 965–66 (1979). Today, we recognize that tortious conduct occurring in this state may by itself satisfy the statute. *See D & D Fuller,* 780 P.2d at 525.

█ The torts at issue here required as essential elements the misrepresentation of a material fact, i.e., the type of engine with which the Porsche was equipped. As alleged in the complaint, some of these misrepresentations were made in advertisements included in nationally circulated magazines. Others were specifically directed into Colorado in the course of telephone conversations between Kuehl, in Omaha, and Schocket, in Colorado. These were among the misrepresentations constituting the totality of conduct making up the tortious acts. Thus, they formed an important part of the basis of "[t]he commission of a tortious act," § 13–1–124(1)(b), and they were received "within this state," *id.* Although the defendants did not leave Nebraska in the course of directing allegedly false advertising material and telephonic communications into Colorado, the misrepresentations were not complete until received by Schocket in Colorado. We hold that this was sufficient to constitute tortious acts within this state within the meaning of section 13–1–124(1)(b), provided that assertion of jurisdiction by Colorado courts is consistent with due process of law.[3] We now turn to the constitutional question of due process.

## IV.

█ In *Fleet Leasing,* we summarized the nature of the inquiry and analysis necessary to determine whether assertion of personal jurisdiction over a nonresident defendant is consistent with due process. We explained:

> Due process prohibits the exercise of *in personam* jurisdiction over a nonresident defendant unless the defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283, 132 A.L.R. 1357 (1940). Thus, the relationship between the defendant and the forum state must be such that it is reasonable to require the defendant to defend the particular suit which is brought there. *Id.* [326 U.S.] at 317, 66 S.Ct. at 158, 90 L.Ed. at 102. The "minimum contacts" standard protects the defendant against litigating in an inconvenient forum and, at the same time, ensures that the states do not overreach the limits imposed upon them by their status as co-equal sovereigns in our federal system. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980).

*Fleet Leasing,* 649 P.2d at 1078–79 (brackets in original). *Accord D & D Fuller,* 780 P.2d at 525. "In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)); *Le Manufacture Francaise,* 620 P.2d at 1047.

---

**3.** Schocket, a Colorado resident, paid $9,000 by check in Nebraska to purchase the Porsche. He then returned to Colorado and kept the vehicle here. Although the check was delivered in Nebraska, Schocket's financial loss arguably produced its effect upon him in Colorado, where he lived and worked. The injury itself, therefore, although precipitated by an event in Nebraska, was in a very real sense suffered in Colorado. *Cf. Scheuer v. District Court,* 684 P.2d 249, 251 (Colo.1984) (New Mexico attorney's alleged negligent disbursement of funds of Colorado client from attorney's trust fund caused injury in Colorado and satisfied long arm statute requirement of commission of a tortious act in Colorado). We need not determine whether this consequence of the alleged tortious conduct is sufficient to support jurisdiction under § 13–1–124(1)(b).

In appropriate circumstances a court may conduct an abbreviated minimum contacts analysis when the commission of a tort forms the basis of personal jurisdiction. In *D & D Fuller* we observed:

Frequently, the commission of a tort, in itself, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry. In such cases there is no need to further engage in a minimum contacts analysis, because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction....

....

The United States Supreme Court has addressed the issue of what contacts are necessary to satisfy due process in the context of an intentional tort. In *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Court approved an "effects" test and held that where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process.

780 P.2d at 525–26 (citations omitted).

The contacts in this case satisfy the due process standards set forth in *D & D Fuller*. Classic Auto Sales advertised the Porsche for sale in two nationally circulated magazines. In addition, the president of the company made representations to Schocket over the telephone regarding the character of this automobile. We have previously recognized that contact with the forum state by telephone or mail may furnish the necessary minimum contacts essential for the exercise of personal jurisdiction. *Waterval v. District Court*, 620 P.2d 5, 8 (Colo.1980), *cert. denied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981) (jurisdiction asserted under transaction of business standard of § 13–1–124(1)(a)). Such communications constitute an important factor in a personal jurisdiction analysis. *Scheuer v. District Court*, 684 P.2d 249, 251–52 (Colo.1984) (jurisdiction asserted un-

der commission of tortious act standard of § 13–1–124(1)(b)). We conclude, therefore, that the alleged telephone conversations, especially when taken together with the magazine advertisements, were sufficient "minimum contacts" to subject the defendants to the jurisdiction of Colorado courts for the purpose of this case consistent with due process requirements of fair play and substantial justice. *See generally Fleet Leasing*, 649 P.2d at 1078–79 (discussing due process standards).

Our analysis comports with that of other courts that have considered whether deceptive telephone solicitation will subject a nonresident seller to personal jurisdiction for fraud claims in the buyer's home state consistent with due process. *Wysnoski v. Millet*, 759 F.Supp. 439, 443 (N.D.Ill.1991) (advertising aircraft for sale in national magazine, speaking to Illinois buyer by telephone when buyer inquired in response to ad, and sending letter and facsimile to Illinois buyer, where all communications concerned sale of aircraft and contained allegedly fraudulent statements, subjected out-of-state seller to jurisdiction of Illinois courts for purpose of buyer's fraud claim); *Rose v. Franchetti*, 713 F.Supp. 1203, 1205, 1212–13 (N.D.Ill.1989) (misrepresentations over the telephone by Massachusetts seller to buyer in Illinois concerning condition of airplane, coupled with advertising in general circulation magazine in Illinois, and sale of airplane in Massachusetts knowing that it would be returned to Illinois satisfied due process requirements for Illinois jurisdiction); *Ammon v. Kaplow*, 468 F.Supp. 1304, 1311–12 (D.Kan.1979) (contacts over the telephone by New York seller with Kansas buyer, especially when coupled with misrepresentations in journal mailed into Kansas concerning condition of horse, and certain misrepresentations and other activities in New York incident to effecting sale, subjected New York seller to jurisdiction in Kansas for resolution of the buyer's fraud claim consistent with due process). *See also Bennett Waites Corp. v. Piedmont Aviation, Inc.*, 563 F.Supp. 810, 812 (D.Colo.1983) (recognizing potential for personal jurisdiction where specific misrepre-

sentations have been made by telephone from out-of-state into the forum state). In addition, courts have upheld personal jurisdiction in other types of actions arising out of communications received by the injured party within the home state. *Brainerd v. Governors of the University of Alberta,* 873 F.2d 1257, 1259 (9th Cir.1989) (vice-president of University of Alberta, Canada, subject to personal jurisdiction in Arizona based on alleged intentional torts in responding to a telephone inquiry from University of Arizona concerning a colleague); *Ruggieri v. General Well Service, Inc.,* 535 F.Supp. 525, 535–36 (D.Colo.1982) (Montana defendants subject to personal jurisdiction in Colorado on fraud claim based upon affirmative misrepresentations contained in bids mailed to Colorado).

## V.

### A.

The defendants rely on *Ferrari v. District Court,* 185 Colo. 136, 140, 522 P.2d 105, 107 (1974), as establishing that a tortious act occurs for personal jurisdiction purposes under section 13–1–124(1)(b) in the location where the last event takes place that is necessary to render the actor liable.[4] The defendants contend that the last event in the continuum of conduct allegedly leading to a completed tort took place in Nebraska when Schocket wrote a check in payment for the Porsche. It is true that *Ferrari* quotes the following language from *Gray v. American Radiator &*

**4.** *Ferrari* was a tort action in which the plaintiff asserted personal jurisdiction over the defendant based upon the tortious act subsection of the long arm statute. 185 Colo. at 139–41, 522 P.2d at 106–07.

**5.** We followed *Ferrari* in *Shon v. District Court,* 199 Colo. 90, 94, 605 P.2d 472, 475 (1980). *See also McAvoy,* 757 P.2d at 635–36; *Vandermee,* 164 Colo. at 122–23, 433 P.2d at 337–38.

**6.** We recognize that the framers of the *Restatement of Conflict of Laws* (1934) no longer subscribe to the rule set forth in section 377. This section has been superseded by section 145 of the *Restatement (Second) of Conflict of Laws* (1971). We announced our "adoption" of sec-

*Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761, 762 (1961), with approval:

> It is well established, however, that in law the place of a wrong is where the last event takes place which is necessary to render the actor liable. Restatement, Conflict of Laws, sec. 377.

185 Colo. at 140, 522 P.2d at 107.[5] The quote pertains to an analysis of conflict of laws issues, however, as revealed by the fact that it cites as authority the *Restatement of Conflict of Laws* (1934).[6] Conflict of laws issues in tort cases typically involve questions concerning the law to be applied to determine the existence and consequences of allegedly tortious conduct. Personal jurisdiction analysis rests on entirely different considerations. *Waterval,* 620 P.2d at 10.[7]

*Ferrari* also involved facts very different from those in the present case. *Ferrari* was a product liability action, in which we held that Colorado courts could not assert personal jurisdiction over an Italian automobile manufacturer whose distributor gave possession of an allegedly defective car in Nevada to a Colorado citizen for delivery to a Denver dealer. The Colorado citizen sustained injuries in a Nevada accident and then returned to Colorado and died. We held that "the fact that [the plaintiff] died in Colorado does not constitute a 'tortious act.'" 185 Colo. at 139, 522 P.2d at 107.

### B.

The language in *Ferrari* also does not comport with the flexibility required in due

tion 145 in *First Nat'l Bank v. Rostek,* 182 Colo. 437, 448, 514 P.2d 314, 320 (1973).

**7.** In *Waterval,* a tort action, in which jurisdiction over the nonresident defendant was asserted under the "doing business" subsection of Colorado's long arm statute, § 13–1–124(1)(a), we observed:

> Assuming *arguendo* that petitioner's activities in Virginia might be considered as "the center of gravity" of the controversy, or that Virginia might be the most convenient location for litigation, these considerations relate essentially to choice of law and selection of forum, and not to personal jurisdiction. *Hanson v. Denckla,* 357 U.S. [235 (1958) ] at 254, 78 S.Ct. [1228] at 1290, 2 L.Ed.2d [1283] at 1298.

620 P.2d at 10.

process analysis. The nature of a due process inquiry requires that we examine each case on its specific facts. *E.g., D & D Fuller*, 780 P.2d at 525; *Fleet Leasing*, 649 P.2d at 1079. The principles announced in *Fleet Leasing* emphasize the importance of flexibility in personal jurisdiction analysis:

> Requiring as it does a determination of "reasonableness," the "minimum contacts" standard is not susceptible of mechanical application and, instead, involves an *ad hoc* analysis of the facts. In this area of the law the ultimate determination will rarely, if ever, be written in black and white. "The greys are dominant and even among them the shades are innumerable." *Kulko v. Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 141 (1978), *quoting Estin v. Estin*, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561, 1566 (1948).

*Fleet Leasing*, 649 P.2d at 1079. *Ferrari*'s rigid last event language is inconsistent with and has been implicitly rejected by cases such as *D & D Fuller* and *Fleet Leasing*.

■ Notably, we have specifically rejected a last event rule in the context of a personal jurisdiction analysis of a contract claim arising out of "[t]he transaction of any business within this state" under section 13–1–124(1)(a), 6A C.R.S. (1987). *Knight v. District Court*, 162 Colo. 14, 20, 424 P.2d 110, 112–13 (1967).

> [E]ven though the "last act," such as the signing of a contract, for example, may have occurred outside the geographical confines of the forum state, nevertheless the statutory test of a claim arising out of the transaction of any business within the state may still be met by the showing of *other* "purposeful acts," performed within the forum state by the defendant in relation to the contract, even though such acts were preliminary, or even sub-

sequent, to the execution of the contract itself.

*Id.* (emphasis in original). We more recently confirmed our adherence to a flexible personal jurisdiction test and the principle announced in *Knight. Waterval*, 620 P.2d at 10. The lessons of *Knight* and *Waterval* are particularly applicable to an analysis of personal jurisdiction in tort cases, where the requirements of due process may prove less stringent. *See Texair Flyers, Inc. v. District Court*, 180 Colo. 432, 438, 506 P.2d 367, 370 (1973). Thus, where an action arises out of tortious activity taking place within the state, the assertion of personal jurisdiction does not offend due process. *See D & D Fuller*, 780 P.2d at 525; *Le Manufacture Francaise*, 620 P.2d at 1047.

It is important to recognize that the defendants in the present case are not charged with "mere untargeted negligence." Rather, as in *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), their intentional and allegedly tortious actions were "expressly aimed" at Colorado. Under the circumstances, they should reasonably have anticipated being haled into court in Colorado. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).[8]

■ We now reject the language in *Ferrari* that the last event necessary to complete a tort determines and limits the forum in which jurisdiction can be asserted over the alleged tortfeasor. Personal jurisdiction analysis must remain elastic and capable of adaptation to varying circumstances; bright line rules do not serve this purpose. In addition, such rules narrow the reach of the Colorado long arm statute. Under *Ferrari*'s last event rule, the Colorado long arm statute is more restrictive

---

**8.** The allegations of affirmative misrepresentations by Classic Auto Sales in nationally circulated magazines and in telephone conversations with Schocket distinguish this case from *Safari Outfitters, Inc. v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1969), upon which the defendants rely. In that case we held that advertisements in three nationally distributed magazines, together with mailed exchanges of letters, infor-mation, checks, and other documents did not subject the Chicago-based seller to the jurisdiction of Colorado courts for adjudication of a Colorado buyer's breach of contract action relating to arranging an African safari. The buyer asserted jurisdiction under the doing business provision of Colorado's long arm statute. No tortious conduct was alleged in *Safari Outfitters.*

than due process would require. This conflicts with a long line of established precedent providing that the long arm statute extends the jurisdiction of Colorado courts to the fullest extent permitted by the due process clause. *E.g., McAvoy,* 757 P.2d at 634; *Fleet Leasing,* 649 P.2d at 1078. In short, while remaining satisfied with the correctness of the result reached in *Ferrari,* we disapprove its holding that for the purpose of section 13–1–124(1)(b) the place where a tort is committed is the place where the last event necessary to render the actor liable took place.[9]

We affirm the judgment of the Colorado Court of Appeals.

---

**9.** In *Ferrari* itself, we recognized that the critical question was "whether the [defendant manufacturer] has minimum contacts in Colorado in order to meet due process requirements and not offend traditional notions of fair play and substantial justice." *Ferrari,* 185 Colo. at 139, 522 P.2d at 106.