PROGRESSIVE GAMES, INC.
a Delaware corporation,
Plaintiff,

v.

AMUSEMENTS EXTRA, INC.; Marcel Huard; BCD Mecanique Distribution a/k/a ABCE Electro–Mecanique Ltee.; Distribution, Equipments, Qualite de Casinos Ltee. n/k/a Megapro; Jean–Marc Guimont; Linda Bouchard; Distribution Equipments Qualite de Casinos Ltee.; Marcel Guillemette; Futek–MSM Patents Ltd.; Charles Bergeron; Diversion Extra de Quebec S.A., Defendants.

No. Civ.A. 97–WY–2689–CB.

United States District Court,
D. Colorado.

July 29, 1999.

Robert E. Purcell, Jerry Thomas Kearns, Reilly & Purcell, P.C., Denver, CO, Kurt S. Lewis, Webb & Lewis, LLC, Denver, CO, Friederick C. Haines, Atty. General's Office, Denver, CO, for Progressive Games, Inc.

Thomas H. Young, Gregory D. Liebold, Dorsey & Whitney, LLP, Denver, CO, Michael Bednarek, Kilpatrick Stocketon, Richard T. Peterson, Kenneth Godlewski, Ronald Lee Raider, James R. Myers, Kilpatrick Stockton LLP, Washington, DC, for Amusements Extra, Inc., Marcel Huard, Distribution, Equipments, Qualite De Casinos Ltee, Marcel Guillemette, Futek–MSM Patents, Ltd., Jean–Marc Guimont, BCD Mecniaue Distribution, Linda Bouchard.

## ORDER ON MOTIONS TO DISMISS

BRIMMER, District Judge.

This matter comes before the Court on Motions to Dismiss by several Defendants: Distribution, Equipments, Qualite de Casinos ("DEQ Casinos"); Guimont; Futek–MSM Patents, Ltd. ("Futek–MSM"); Guillemette; BCD Mecanique Distribution ("BCD"); Diversion Extra de Quebec ("Diversion"); Bergeron; and Bouchard. After reading the briefs, hearing oral argument, and being fully advised of the premises contained therein, the Court FINDS and ORDERS as follows:

### BACKGROUND[1]

This is a patent infringement case brought by Plaintiff Progressive Games, Inc. ("PGI") against the Canadian citizens, corporations, and residents listed above (the "Canadian defendants"). Defendants are individuals and corporations allegedly involved to varying degrees in the gaming industry. Plaintiff contends that Defendants have introduced games (allegedly infringing on Plaintiff's patents) into the United States market. In these motions to dismiss, the Canadian defendants assert that this Court lacks personal jurisdiction over them and must, as a result, dismiss Plaintiff's Second Amended Complaint against them.

### ANALYSIS

**1. Standard**

■■■ In considering a motion to dismiss, the Court must accept as true all the plaintiff's well-pleaded factual allegations. See Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th Cir.1995). The plaintiff, however, bears the burden of establishing that personal jurisdiction exists. See Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir.1984). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.

**2. Personal Jurisdiction and Rule 4(k)(2)**

The defendants contend that this Court lacks personal jurisdiction over them because they have no contacts with Colorado sufficient to satisfy either the elements of either general or specific jurisdiction. That is, Defendants allege to have no sys-

---

1. For a history of the case and the claims brought by the plaintiff, see this Court's Order on Summary Judgment dated July 12, 1999.

The facts as described in that case are incorporated by reference.

tematic and continuous contacts with Colorado such that they could reasonably be expected to be haled into Court there on any matter whatsoever (general jurisdiction), and that they have no contacts with Colorado that can be said to give rise to the Plaintiff's purported injuries (specific jurisdiction).

However, Defendants are only partially correct in their analysis of the forum with which they must have minimum contacts for this Court to exercise personal jurisdiction. Following the Supreme Court's suggestion in *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), Congress, along with the Supreme Court and the Advisory Committee, adopted Federal Rule of Civil Procedure 4(k)(2). The adoption of Rule 4(k)(2) was necessary to fill the gap in the enforcement of federal law so that a defendant would not be not "shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts." *See* Fed. R.Civ.P. 4(k)(2) Advisory Committee's Note (1993).

Rule 4(k)(2) addresses a very specific situation. The situation arises when the defendant is not a resident of the United States and does not have sufficient contacts to satisfy the long-arm statute of any state "or [to] meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction," but nevertheless has sufficient contacts with the United States as a whole for the federal courts to apply federal law. Fed.R.Civ.P. 4(k)(2) Advisory Committee's Note (1993). Rule 4(k) provides, in relevant part:

**(k)** Territorial Limits of Effective Service

(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

 (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or

 . . . . .

(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the court or general jurisdiction of any state.

■ Thus, according to Rule 4(k)(1), if the defendants are subject to either general or specific jurisdiction in Colorado, the forum state, the Court's inquiry is complete and personal jurisdiction over the defendants is satisfied. If the defendants have insufficient contacts with Colorado, however, the Court moves on to an analysis under 4(k)(2).

■ To determine if Rule 4(k)(2) is applicable, two threshold questions must be answered. The first question is whether the cause of action alleged in the suit arises under federal law. If the answer is yes, the next question is whether the defendants are amenable to general jurisdiction in any other state.[2] If that answer is

---

**2.** If the suit arises under a federal law that provides for nationwide service of summons, the Court may exercise personal jurisdiction without proceeding to step two.

Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of process must be satisfied. *See Omni Capital*, 484 U.S. at 104, 108 S.Ct. 404. However, when Congress has enacted a personal jurisdiction (service of process) statute for a federally created cause of action, a federal district court may exercise extraterritorial jurisdiction over any non-resi-

dent of the United States merely if Fifth Amendment due process requirements are satisfied. *See* 4 *Charles A. Wright & Arthur R. Miller, Fed. Pract. & Proc.* Civil 2d § 1067.1 (1999). In sum, if service of process can be statutorily executed in any district, and service of process is the key to personal jurisdiction, then any district may exercise personal jurisdiction over a defendant without proving contacts with that, or any other, district.

However, Congress has not enacted a statute governing personal jurisdiction (nationwide service of summons) in patent infringe-

yes—if the defendant has sufficient contacts with another state to establish general jurisdiction—then the Court's inquiry ends. Rule 4(k)(2) would not apply, the Court lacks personal jurisdiction, and the defendant should be dismissed from the case. If that answer is no—if the defendant does not have sufficient contacts to establish general jurisdiction in another state—then Rule 4(k)(2) can be applied to assert personal jurisdiction; in addition, the Court must proceed to a Fifth Amendment due process analysis wherein the Court considers a defendant's contacts throughout the United States. *See, e.g., Chew v. Dietrich*, 143 F.3d 24, 28 n. 4 (2d Cir.1998).

■ The first prong is satisfied in this case. This suit arises under federal law—the patent laws of the United States. Therefore, the Court proceeds to question two: Are any of the defendants amenable to general jurisdiction in any other state? General jurisdiction, as opposed to specific jurisdiction, is not related to the events giving rise to the suit. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "Courts impose a more stringent minimum contacts test," when analyzing general jurisdiction questions, that require demonstration of "the defendant's continuous and systematic general business contacts" with the forum.[3] *Id.* If a party is amenable to general jurisdiction, it has such numerous contacts with a forum that

it may be haled into the forum's court even for a suit not arising out of its forum contacts.

■ Keeping this analysis in mind, the Court will now address in turn each defendant's motion to dismiss.[4]

### a. Linda Bouchard

■ Defendant Bouchard claims to have no contacts with the United States, other than when she has been on vacation. Plaintiff asserts that Bouchard, a lawyer, has performed substantially all of the legal work for each defendant involved in this case. She is also a corporate officer of Defendant DEQ Casinos, the company that provided each of the allegedly infringing games promoted in the United States. (Huard Dep. at 124.)

Plaintiff has not pointed to any contacts by Bouchard with the State of Colorado. Thus, the Court cannot exercise personal jurisdiction under Colorado's long-arm statute. In addition, the Court is not aware of any contacts Bouchard has had with other states in the union. Therefore, no state can claim to have general personal jurisdiction over Bouchard.

The Court now moves to an analysis under Rule 4(k)(2). However, Plaintiff has failed to show that Bouchard has had contact—systematic or otherwise—with any state. Plaintiff argues that Bouchard is a "motive force in establishing and maintaining the sham corporate facades" of the

ment cases. *See L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425 (N.D.Ind.1994). Thus, according to 4(k), the Court must ensure that the defendants are not subject to the general jurisdiction of any state before proceeding with its nationwide contacts analysis.

3. Specific jurisdiction, on the other hand, may be exercised "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

4. Plaintiff contends that because the parties are inextricably intertwined and act collec-

tively in most respects, the Court should assert jurisdiction over them en masse. While Plaintiff's contention regarding Defendants' collective action may be true, the Court must evaluate personal jurisdiction as to each Defendant separately. The unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts to justify an assertion of jurisdiction. *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868; *see also Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

defendants. However, her work appears to have confined itself to Canada. Plaintiff also points to Bouchard's position at DEQ Casinos. However, her position as a corporate officer of DEQ Casinos—and DEQ's alleged contacts with the United States—is not relevant to the Court's personal jurisdiction analysis. Bouchard's contacts are "not to be judged according to [her] employer's activities there." *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). "Each defendant's contacts with the forum State must be assessed individually." *Id.*

The Court has determined that Bouchard does not have contacts with the United States sufficient to satisfy the Fifth Amendment Due Process Clause. Accordingly, Defendant Bouchard's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.**

### b. DEQ Casinos

■ DEQ Casinos is a Canadian corporation owned by Defendant Guimont. DEQ Casinos is currently the sole known producer of the "Extra Match" game, one of the allegedly infringing games at issue in this suit. DEQ Casinos has submitted the "Extra Match" games to the Nevada gaming commission and has displayed the game at a Minnesota trade show in conjunction with Ten Stix, a Colorado company. (Huard Dep. at 87–88.) DEQ Casinos negotiated over a six month period with two Colorado companies to distribute the allegedly infringing games in the United States. In addition, DEQ Casinos allegedly displayed the "Shotgun 21" and "Extra Match" games in Colorado at the offices of Ten Stix. (Huard Dep. at 73.)

The Court finds that DEQ Casinos has directed its activities to Colorado to such an extent that the Court may exercise specific personal jurisdiction over it. The Colorado long-arm statute, Colo.Rev.Stat. § 13–1–124, extends the jurisdiction of Colorado courts to any person who engages in "the transaction of any business within" Colorado or who commits a tortious act within Colorado.

The Court employs a three prong test to determine whether DEQ Casinos transacted any business within Colorado: (1) The defendant must purposefully avail itself of the privilege of acting in the forum state, (2) the cause of action must arise from the consequences in the forum state of the defendant's activities, and (3) the defendant's activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Van Schaack & Co. v. District Court*, 189 Colo. 145, 538 P.2d 425, 426 (1975).

The Court finds that Plaintiff has made a prima facie showing of personal jurisdiction under the business provisions of the long-arm statute. DEQ Casinos purposefully availed itself of the privilege of acting within the State. It negotiated with a Colorado company for at least six months to distribute the allegedly infringing games in the United States. The infringement action arises from, in part, DEQ Casinos distribution of the game in the United States. In addition, the exercise of jurisdiction is reasonable because of the length of time Defendant directed its activities toward Colorado and the fact that it displayed its merchandise in Colorado.

The Court could also exercise jurisdiction under the Colorado long-arm's tort provision. In defining the contours of the tort provision, the Colorado Supreme Court has stated that "in order to satisfy the statutory standard for assertion of long arm jurisdiction ... it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo.1992). Instead, Colorado courts have held that the statute may be satisfied when (1) tortious conduct occurs in Colorado, or (2) when tortious conduct initiated in another state causes injury in Colorado. *See id.* at 235–36.

Defendant DEQ has allegedly committed a tort in Colorado. The negotiations to distribute the allegedly infringing game occurred in and were directed toward Col-

**1192**

orado. In addition, DEQ committed another allegedly tortious act by displaying the infringing game in Colorado. For these reasons, the Court finds that DEQ Casinos has sufficient minimum contacts with Colorado in order to be reached by the long-arm statute.

The Court must now determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution. *Far West Capital Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995). This requires the Court to consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 105, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted). Considering both the number of contacts DEQ Casinos has had with Colorado and the quality of those contacts, the Court finds that the exercise of jurisdiction over the defendant is foreseeable, fair, and just. Defendant purposefully directed its activities toward Colorado when it negotiated with the two Colorado companies. In addition, the Court does not believe that exercising personal jurisdiction over the defendant is unduly burdensome, especially since DEQ is an entity, not an individual. DEQ has, on other occasions, made its presence known in the United States. Doing so once again to defend this lawsuit will not unduly burden this defendant. Given the circumstances of this case, jurisdiction is proper.

Thus, Defendant DEQ Casinos' motion to dismiss for lack of personal jurisdiction is **DENIED.**[5]

**c. Jean–Marc Guimont**

Defendant Guimont is a citizen and resident of Canada. He is also president and sole shareholder of DEQ Casinos, the producer of the allegedly infringing "Extra Match" game. Guimont attended a trade show in Las Vegas where he displayed allegedly infringing games and offered them for sale. Guimont admits that his company operates a web site that allegedly displayed promotional information regarding the "Extra Match" game.

As mentioned in the discussion of Defendant Bouchard's motion to dismiss, employees should not be held amenable simply because their employer has contacts with the forum. But by the same token, a person's status as employee does not insulate them from jurisdiction, either. *See Calder,* 465 U.S. at 790, 104 S.Ct. 1482. Simply put, while a corporation's activities cannot be attributed to an employee, an employee's activities taken on behalf of the corporation can be. *See id.* This is especially true in the instant case: DEQ casinos is virtually the alter ego of Guimont, its President and sole shareholder.

Thus, the Court finds that Plaintiff has made a prima facie showing of personal jurisdiction over Guimont for virtually the same reasons the Court has jurisdiction over DEQ casinos, explained above. Guimont purposefully availed himself of the privilege of acting within the State by negotiating with Ten Stix to distribute an allegedly infringing game in the United States. The infringement action arises from, in part, this distribution of the game in the United States. With regard to tortious conduct occurring in Colorado, the negotiations between the two Colorado companies and DEQ Casinos and Guimont occurred in and were directed toward Colorado. In addition, Guimont contributed to the display of the infringing game in Colorado. For these reasons, the Court finds that Guimont has sufficient minimum contacts with Colorado—contacts directly giving rise to this cause of action—that allow this Court to reach him via the Colorado long-arm statute.

In addition, the Court finds that exercising jurisdiction over Guimont does not of-

---

**5.** Because the Court has found jurisdiction under the forum state's long-arm statute, it need not conduct an analysis of Rule 4(k)(2). However, even if the Court did not find specific jurisdiction in Colorado, the Court is convinced that jurisdiction would still exist under 4(k)(2) using a nationwide contacts analysis.

fend traditional notions of fair play and substantial justice. Considering both the number and quality of the contacts Guimont had with Colorado through his representation of DEQ Casinos, the Court's exercise of jurisdiction over Guimont is foreseeable, fair, and just because Defendant purposefully directed his activities toward Colorado. In addition, the Court does not believe that exercising personal jurisdiction over the defendant is unduly burdensome. Guimont has traveled to the United States on several occasions to attend trade shows and the like. Given the circumstances of this case, jurisdiction over Guimont is proper.

Defendant Guimont's motion to dismiss is thus **DENIED.**

### d. Futek–MSM

 Defendant Futek–MSM is a Canadian company with a principle place of business in Quebec. It holds one United States patent, a patent unrelated to this lawsuit.

Plaintiff has failed to make a prima facie case of personal jurisdiction with respect to this defendant. Plaintiff has pointed to no contacts that Defendant Futek has with Colorado. Jurisdiction pursuant to the Colorado long-arm statute is therefore not appropriate. Plaintiff has also failed to show that Defendant has enough continuous, systematic contact with any one state to provide for general jurisdiction over the defendant.

The Court must then look to Rule 4(k)(2) to determine if Defendant Futek has enough contacts with the United States as a whole to support personal jurisdiction. Plaintiff has shown no such contacts. Plaintiff merely points to an occasion when Defendant Guillemette attended a trade show in Las Vegas on behalf of Defendant Futek. This single incident is not enough to support jurisdiction even under 4(k)(2)'s nationwide analysis; in any event, an argument for the exercise of jurisdiction would not withstand a Fifth Amendment analysis of "traditional notions of fair play and substantial justice." Simply put, Plaintiff has not carried its burden to present a prima facie case that Defendant Futek has had sufficient contacts with the United States to support personal jurisdiction.

Defendant Futek's motion to dismiss is thus **GRANTED.**

### e. Marcel Guillemette

 Defendant Guillemette, a Canadian citizen and resident, is both President of Futek–MSM and an employee of DEQ Casinos. Plaintiff contends that in Guillemette's work for DEQ, he submitted an application for regulatory approval of the allegedly infringing "Extra Match" game in the United States. (Huard Dep. at 124.) He also negotiated with two Colorado companies to sell and distribute DEQ's allegedly infringing games in the United States. (Cranford Dep. at 37–38.) Guillemette allegedly traveled to Denver as a representative of Amusements Extra (a defendant not party to this motion) for business meetings with two Colorado companies.[6] (Cranford Dep. at 30.) In addition, Guillemette attended trade shows in Las Vegas and Minnesota in connection with the display and sale of the allegedly infringing games.

The Court believes that Defendant Guillemette has enough contacts with Colorado to establish jurisdiction by applying the guidelines of the long-arm statute already explained above.[7] Guillemette has pur-

---

6. Guillemette claims that he merely acted as a translator on his trips to the United States. Plaintiff argues, and has produced some evidence, that Guillemette took an active part in these business dealings. Because the evidence must be viewed in the light most favorable to the plaintiff, the Court adopts Plaintiff's interpretation of these facts for the purposes of this motion.

7. For the sake of brevity, the Court incorporates into the analysis conducted on each defendant both the provisions of the long-arm statute and due process standards in the section concerning Defendant DEQ Casinos.

posefully directed business activities toward Colorado by negotiating with Colorado companies to sell and distribute the allegedly infringing games. The present cause of action arises, in part, from Defendant's activities in Colorado. In addition, Defendant's contacts have a substantial enough connection (in both quantity and quality) with Colorado to make jurisdiction over Defendant reasonable. Finally, the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice because Defendant's contacts were numerous and substantial; it was foreseeable through his actions that Defendant could be haled into Court. Finally, the exercise of jurisdiction over Defendant is not unduly burdensome. Defendant has directed his activities toward and has traveled many times to the United States. He has presented no compelling evidence that traveling here once again to defend a lawsuit is a burden he could not overcome.[8]

■ But even if one argued that the Colorado long-arm statute fails to reach Guillemette, Plaintiff has shown that Guillemette certainly has enough contacts with the United States as a whole to establish jurisdiction under 4(k)(2). First, as per 4(k)(2), the Court finds that Guillemette has insufficient contacts with any one state

for that state to exercise general jurisdiction. A single trip to a state for a trade show, such as Guillemette's trips to Minnesota and Nevada, does not provide enough continuous and systematic contacts under either state's long arm statute[9] to establish general jurisdiction.[10]

Thus the Court looks to Defendant's contacts with the nation as a whole. When the Court considers the totality of those contacts—the negotiations with the Colorado companies, the application for regulatory approval, and the display of infringing games in Minnesota and Nevada—it finds that Plaintiff has produced a prima facie case of personal jurisdiction over Guillemette.[11]

Because the Court finds that it may exercise personal jurisdiction over Defendant Guillemette, his motion to dismiss is necessarily **DENIED.**

### f. BCD Mecanique Distribution ("BCD")

■ Defendant BCD is a Canadian company with a principle place of business in Quebec, Canada. BCD is owned by Real Berube, a former defendant who previously has been dismissed from this case due to lack of personal jurisdiction. BCD licensed DEQ Casinos to distribute the

---

8. The Court is aware that great care should be taken when exercising jurisdiction over foreign nationals. It has not taken this decision lightly. However, considering the fact that Defendant has traveled to the United States quite often, and has purposefully directed his activities toward the forum state, it does not appear unduly burdensome to require the defendant to travel to the states once again.

9. Both states' long-arm statutes provides that a court may exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or of the their state. No state law generated limits are put on the jurisdiction of their state courts. *See Nev.Rev.Stat.* § 14.065 (1998); *Minn.Stat.* § 543.19, subd. 1 (1998). Thus, this Court need only comport with the requirements of the Due Process Clause—to determine whether minimum contacts exist by considering the relationship among the defendant, the forum and the liti-

gation. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Under this standard, insufficient contacts exist to establish general jurisdiction.

10. Guillemette's trips may arguably be enough to establish specific jurisdiction—jurisdiction based on contacts directly related to the cause of action—but not broad-based general jurisdiction whereby defendant may be haled into court for any cause of action unrelated to his conduct in the state.

11. In so concluding, the Court finds that the exercise of jurisdiction comports with the due process requirements of the Fifth Amendment. Those requirements are essentially the same as the due process requirements of the Fourteenth Amendment (traditional notions of fair play and substantial justice) and have already been discussed in this section with respect to this defendant.

allegedly infringing games in the United States. In addition, BCD entered into a cross-licensing agreement for patent rights with the Colorado company Ten Stix. Plaintiff contends that BCD has provided every infringing game system that has been displayed in the United States.

BCD contends that this Court lacks personal jurisdiction over it because it has not contacts with Colorado sufficient to satisfy either general or specific jurisdiction. BCD contends that the companies to which it assigned the rights to the allegedly infringing games are the proper defendants in this matter.

The Court agrees that BCD has insufficient contacts with Colorado to fall into the province of its long-arm statute. Most of the licensing activity and the assignation of rights was done within Canada by BCD with other Canadian companies. Further, the licensing agreement with the Colorado company involves patents not at issue in this case. Jurisdiction under the Colorado long-arm statute does not exist.

Moving on to an analysis under 4(k)(2), the Court cannot imagine that BCD has sufficient contacts with any one state to support general jurisdiction. Thus, the Court must ask whether BCD has sufficient contacts with the United States to satisfy the Fifth Amendment Due Process Clause and its traditional notions of fair play and substantial justice. Furthermore, BCD's activities within the United States must render it foreseeable that it should reasonably anticipate being haled into court here. *See Application to Enforce Admin. Subpoenas v. Knowles,* 87 F.3d 413, 417 (10th Cir.1996).

The Court finds that the limited contacts between BCD and the United States are insufficient to permit the exercise of personal jurisdiction. Plaintiff has failed to show that BCD has played even a slight role in importing, selling, marketing, or distributing any of the allegedly infringing games in the United States. BCD assigned its rights to the allegedly infringing game to another Canadian company, but basing jurisdiction upon this assignment is too attenuated. Plaintiff also argues that BCD owns at least one patent directed to the infringing games. However, Plaintiff has not shown that these patent rights are at all related to the present litigation.

BCD's contacts are not sufficiently systematic and continuous to support the exercise of general jurisdiction, and are not related to the alleged infringement to support the exercise of specific jurisdiction. Defendant BCD's motion to dismiss is thus **GRANTED.**

### g. Diversion Extra de Quebec ("Diversion")

■ Defendant Diversion is a Costa Rican company with a principal place of business in Costa Rica. Diversion is a distribution and contact point in Costa Rica for some of the Canadian defendants.

The Court finds that the limited contacts between Diversion and the United States are insufficient to permit the exercise of personal jurisdiction. Plaintiff has produced no evidence that Diversion imported, sold, marketed, or distributed any of the allegedly infringing games in the United States. Diversion's position as a Costa Rican contact point for the Canadian defendants is not sufficient to establish jurisdiction in a United States Court.

As the Court will discuss in the next section, Diversion's President and shareholder, Defendant Charles Bergeron, had several contacts with the United States. However, the evidence shows that Bergeron acted mostly on behalf of DEQ Casinos, not Diversion, in his activities in the United States. Bergeron's activities on behalf of another company will not be attributed to Diversion.

The Court finds that Diversion has insufficient contacts to establish either general or specific jurisdiction in Colorado, to establish general jurisdiction with any other state, or to establish jurisdiction under 4(k)(2). The Court simply cannot fathom a way to exercise jurisdiction over Diversion without violating the Fifth Amendment.

Accordingly, Defendant Diversion's motion to dismiss is **GRANTED.**

### h. Charles Bergeron

■ Defendant Bergeron is a citizen of Canada and a resident of Costa Rica. He is President of Defendant Diversion, and a representative of Defendant DEQ n/k/a MegaPro. Bergeron represented DEQ in its negotiations with Colorado companies concerning distribution rights of the allegedly infringing games in the United States. Bergeron personally demonstrated the infringing games to those Colorado representatives. (Humecki Dep. at 84.) As a result of these negotiations, DEQ ultimately displayed the games at the offices of Ten Stix. In addition, Bergeron allegedly orchestrated the installation of the infringing game in a Florida-based cruise ship.

The Court finds that it may exercise personal jurisdiction over Defendant Bergeron based upon his contacts with Colorado. Bergeron purposefully directed business activities toward Colorado by negotiating with the Colorado companies to sell and distribute the allegedly infringing games. He demonstrated the allegedly infringing games for these companies. The cause of action in question arises, in part, from Bergeron's activities in Colorado.

These contacts have a substantial enough connection with Colorado to make jurisdiction over Bergeron reasonable. In addition, the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice because of the number and quality of the contacts he had with Colorado during the negotiations. Jurisdiction over Defendant Bergeron is not unduly burdensome. Bergeron has traveled frequently to the United States in the past. He has failed to sufficiently show that he would be unable to travel here once again to defend a lawsuit. Finally, Bergeron's contacts with Colorado made it foreseeable that he could be haled into this Court.

12. *See supra* footnote 9.

■ But even if the Colorado long-arm statute failed to reach Bergeron, Plaintiff has shown that he has enough contacts with the United States as a whole to establish jurisdiction under 4(k)(2). First the Court finds that Bergeron does not have sufficient contacts with any one state for that state to exercise general jurisdiction. A single trip to Nevada for a trade show does not provide enough continuous and systematic contacts under that state's long arm statute to establish general jurisdiction.[12]

Thus the Court looks to Defendant's contacts with the nation as a whole. When the Court considers the totality of those contacts—the extensive negotiations with the Colorado companies and the demonstration of the allegedly infringing game, the display of the game at the Nevada trade show, and the alleged installation of the infringing game in a Florida-based cruise ship—it finds that Plaintiff has produced a prima facie case of personal jurisdiction over Bergeron

Defendant Bergeron's motion to dismiss is thus **DENIED.**

### *CONCLUSION*

For the reasons stated above, the Motions to Dismiss brought by Defendants Linda Bouchard, Futek–MSM, BCD Mecanique Distribution, and Diversion Extra de Quebec are **GRANTED.** The Motions to Dismiss brought by Defendants DEQ Casinos, Jean–Marc Guimont, Marcel Guillemette, and Charles Bergeron are **DENIED.** All parties shall bear their own costs.