KLEINFELD, APPELLEE, *v.*
LINK, APPELLANT.

(No. 1-82-31—Decided March 22, 1983.)

*Messrs. Hunt, Moritz & Johnson* and *Mr. Jerry M. Johnson,* for appellee.

*Messrs. Gooding, Evans & Huffman* and *Mr. Lawrence A. Huffman,* for appellant.

*Per Curiam.* This is an appeal from a judgment of the Lima Municipal Court in favor of the plaintiff-appellee, Andrew J. Kleinfeld, which granted full faith and credit to a judgment rendered by a court of the state of Alaska.

In 1979 the defendant, Richard Link, an Ohio resident, placed an advertisement to sell a camera in a nationally circulated flyer containing numerous individual classified advertisements of articles for trade or sale (printed in Florida), entitled "Shutterbug Ads." The plaintiff, a resident of Alaska, read the ad and phoned the defendant in Ohio, making an offer to purchase. In May 1979, the plaintiff sent a $400 check to the Ohio defendant; and, thereafter, the camera was shipped to Alaska. According to the plaintiff, the camera arrived in Alaska damaged, and was therefore returned to Ohio along with a demand for the $400 already paid. Remaining unsatisfied, the plaintiff filed a complaint in the Alaska district court.

Defendant, having not responded to the properly served complaint, the Alaska court granted plaintiff a default judgment.

On May 12, 1982, the Lima Municipal Court granted full faith and credit to the Alaskan judgment finding that the Ohio defendant fell within the Alaskan long-arm statute and had the requisite "minimum contacts" with Alaska.

Appellant's sole assignment of error states:

"The trial court erred in finding that defendant-appellant had 'done business' in Alaska and further erred in giving full faith and credit to the Alaska judgment which judgment was unconstitutionally rendered by the Alaska Court."

Before proceeding to the issue we note that the defendant argues by brief that Alaska Code 9.05.015 was unconstitutionally applied and that Alaska is the forum non conveniens. Cf. *Litsinger Sign Co.* v. *American Sign Co.* (1967), 11 Ohio St. 2d 1 [40 O.O.2d 30]. The arguments to the extent made as to "forum non conveniens" and as to "doing business" are merged into the general question of due process which is hereinafter discussed and determined.

The narrow issue we must decide is whether Alaska, consistent with the due process requirements of the Fourteenth Amendment, could obtain in personam jurisdiction over the non-resident defendant.

A judgment rendered in violation of the Due Process Clause is void, subject to collateral attack, and not entitled to full faith and credit elsewhere. *Pennoyer* v. *Neff* (1877), 95 U.S. 714. The once inflexible *Pennoyer* requirements have evolved into state courts exercising personal jurisdiction over non-resident defendants so long as there exist "minimum contacts" between the defendant and the forum state. The "minimum contacts" requirement performs two functions. First, it protects the defendant from being required to defend in distant or inconvenient forums. Secondly, it ensures that states do not reach beyond the limits imposed on them by "their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, 292.

The constitutional standard for obtaining non-resident jurisdiction was set forth in *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, 316, wherein the court stated that a defendant must "have certain minimum contacts with * * * [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" An essential ingredient in these cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that state. *International Shoe Co., supra,* at 316-317. In *Hanson* v. *Denckla* (1958), 357 U.S. 235, 253, the court stated that, "[i]t is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State."

Here, appellee attaches great significance to *McGee* v. *International Life*

*Ins. Co.* (1957), 355 U.S. 220. In *McGee,* the court held that a single insurance contract between the non-resident defendant and the plaintiff was enough to avail the court of jurisdiction.

The court noted that the contract was delivered in the forum state, that the premiums were mailed for several years from there, and that the forum state had a manifest interest in protecting its residents from insurers who refused to pay. *McGee, supra,* at 223. Courts have considered this case to be a high water mark in granting in personam jurisdiction. Several courts have limited this case to its facts with particular emphasis on its being an *insurance* case, noting that every state regulates insurance to a high degree. See, generally, *Allied Finance Co.* v. *Prosser* (1961), 103 Ga. App. 538, 119 S.E. 2d 813; *Conn* v. *Whitmore* (1959), 9 Utah 2d 250, 342 P.2d 871; Annotation (1968), 20 A.L.R. 3d 1201. Several other courts have similarly distinguished *McGee,* even though the contact with the forum state was one contract. See *Chassis-Trak, Inc.* v. *Federated Purchaser, Inc.* (D. N.J. 1960), 179 F.Supp. 780; *Clawson* v. *Garland* (D.S.C. 1965), 37 F.R.D. 324; *Perlmutter* v. *Standard Roofing & Tinsmith Supply Co.* (1964), 43 Misc. 2d 885, 252 N.Y. Supp. 2d 583; *N.R.M. Corp.* v. *Pacific Plastic Pipe Co.* (1973), 36 Ohio App. 2d 179 [65 O.O.2d 261]. In any event, *McGee* is distinguishable from the case at bar, in that there were neither continual payments or contacts with the forum state, nor a compelling state interest to address (insurance).

Collectively the cases have enunciated several factors to weigh in determining "minimum contacts," to wit:

(1) established activity by non-resident in the forum state;

(2) non-resident takes advantage of privileges and benefits of forum state;

(3) non-resident solicits business

through agents or advertising reasonably calculated to reach the forum state;

(4) it is foreseeable that non-resident will litigate in the forum state; and

(5) convenience to the litigants and fairness of requiring non-resident to come to the forum state.

With these factors, we proceed to analyze the contacts in the case at bar.

First, the defendant had no established business activity in the forum state. From the record, it appears this transaction was a one-time casual sale to a willing buyer. Neither the defendant, not his agent, was ever present in Alaska or transacted any business there.

Secondly, it does not appear that the defendant ever took advantage of any of the benefits or services of Alaska, except for the roads or airspace used by the common carrier to make the camera delivery. These facts alone are simply insufficient to establish "minimum contacts." Also, the defendant did not avail himself of any particular benefit or law of Alaska by receiving a phone call and letter from Alaska. *Darby* v. *Superior Supply Co.* (1970), 224 Tenn. 540, 458 S.W. 2d 423; *Capital Dredge & Dock Corp.* v. *Midwest Dredging Co.* (C.A. 6, 1978), 573 F.2d 377. In fact, the only contacts between the two parties, until the camera was shipped, were made by the plaintiff.

The advertising magazine was a national publication, produced in Florida, that potentially was purchased in every state. While foreseeability is not a sole determinative factor, we find it unpersuasive that a reasonably prudent person would foresee being required to litigate in Alaska by placing a one-time ad in a general trade magazine.

Through our research, we have located three cases that are particularly helpful. In *Capital Dredge & Dock Corp.*, *supra*, "minimum contacts" were not satisfied when: (1) all negotiations occurred out of the forum; (2) all calls were initiated by the plaintiff (as here); (3) only a "convenience" stop occurred in the forum; and (4) performance of the contract had no real impact on the forum other than receipt of money. Here, calls originated in Alaska and there was not even a "convenience stop" in Alaska.

In *Pickens* v. *Hess* (C.A. 6, 1978), 573 F.2d 380, the building contract originated through a nationally circulated advertisement posted within the forum state. The court concluded that such unilateral and isolated acts are insufficient to satisfy the due process requirement. *Pickens, supra,* at 384-385.

In *Beal* v. *Caldwell* (D. Tenn. 1970), 322 F. Supp. 1151, the defendant made a one-time sale of an airplane to a resident of Tennessee. The *Beal* court at 1153-1154, stated:

"The most that can be said about these contracts is that the defendant advertised in * * * [a] publication which was used by residents of the fifty states * * *. We do not believe that such procedure [requiring the defendant to travel some 3,000 miles] would meet the traditional notions of fair play. Nor do we believe that defendant's advertisement * * * met the 'quantity and quality tests' necessary to establish a basis for in personam jurisdiction."

We are in accord with the *Beal* and *Pickens* analyses. We conclude that, at best, the ad provides an attenuated contact with the forum state. Most of the precedential minimum contacts cases involve foreign corporations involved in interstate commerce. Here, there is one transaction by individuals from two states. While an individual can establish minimum contacts with another state, under this fact situation the burden has not been met. In *Shaffer* v. *Heitner* (1977), 433 U.S. 186, the court observed at page 204 in fn. 19:

"The differences between individuals and corporations may, of course, lead to the conclusion that a given set of circumstances establishes state jurisdiction over one type of defendant but not over the other."

The last factor, convenience to the litigants, weighs heavily against the plaintiff. The distance, the cost of travel, and the fact that the defendant is an individual bolster the lack of "minimum contacts" and considerations of fairness needed in this case.

Even though *McGee, supra,* as relied upon by the plaintiff, seems to open the "frontiers" in conferring jurisdiction, a stern warning came in *Hanson* v. *Denckla, supra,* at 251, wherein the court stated:

"[I]t is a mistake to assume that this trend [post-*McGee* cases] heralds the demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitation on the power of the respective States."

For the above reasons we conclude that the lower court's granting of full faith and credit violated the Due Process Clause of the Fourteenth Amendment. To this extent the assignment of error is well-taken.

*Judgment reversed and final judgment rendered for defendant.*

MILLER, P.J., and COLE, J., concur.

GUERNSEY, J., not participating.