Alan L. SCHOCKET, M.D., Plaintiff–Appellant,

v.

CLASSIC AUTO SALES, INC., a Nebraska Corporation, and Terry Kuehl, Individually, Defendants–Appellees.

No. 90CA0254.

Colorado Court of Appeals, Div. I.

March 28, 1991.

Rehearing Denied April 25, 1991.

Certiorari Granted Oct. 7, 1991.

**562**

Delap & Barry, P.C., Herbert A. Delap, Denver, for plaintiff-appellant.

Otten, Johnson, Robinson, Neff, and Ragonetti, P.C., Kenneth K. Skogg, Denver, for defendants-appellees.

Opinion by Judge PIERCE.

Plaintiff, Alan L. Schocket, appeals a judgment dismissing his complaint for lack of personal jurisdiction over defendants, Classic Auto Sales, Inc. (Classic) and Terry Kuehl. We reverse and remand for reinstatement of plaintiff's complaint.

In the fall of 1988 plaintiff, a resident of Colorado, purchased two nationally-circulated magazines in which defendants had advertised for sale a 1968 Porsche 911S Targa automobile. In response to the advertisements, plaintiff made a telephone call to Classic in Omaha, Nebraska, at which time Kuehl confirmed the information presented in the advertisements. During the next few weeks plaintiff and Kuehl had a number of telephone conversations regarding the advertised vehicle. Plaintiff then traveled to Omaha and purchased the automobile.

Several months after returning to Colorado, plaintiff discovered that the vehicle he had purchased was not a 911S Targa. Plaintiff thereupon commenced this action, asserting claims for fraud, concealment, negligent misrepresentation, and deceptive trade practices in violation of § 6-1-105, C.R.S., claiming actual and consequential damages on each claim.

Defendants moved to dismiss the complaint on the ground that the court lacked in personam jurisdiction. The court concluded defendants' actions were not expressly directed at causing a harmful effect in Colorado and, therefore, their contacts with this state were insufficient to establish personal jurisdiction. Accordingly, the court granted the motion and dismissed the complaint.

On appeal, plaintiff contends that defendants' fraudulent misrepresentations constitute tortious conduct within Colorado sufficient to confer personal jurisdiction over claims arising from those misrepresentations. We agree.

In determining the existence of personal jurisdiction, a court must engage in a two-tiered inquiry. First, the court must determine whether the long-arm statute, § 13-1-124, C.R.S. (1987 Repl.Vol. 6A), provides a basis for the exercise of jurisdiction. If so, then the court must consider whether the exercise of jurisdiction would violate the due process principles of the federal constitution.

I.

When it dismissed the complaint, the trial court relied on *Safari Outfitters v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1969). We are persuaded, however, that later cases have modified the law in Colorado and that, therefore, exercise of jurisdiction was proper here.

Under § 13-1-124(1)(b), C.R.S. (1987 Repl.Vol. 6A), Colorado courts may assert jurisdiction over a nonresident defendant when the cause of action arises from the "commission of a tortious act within this state." For purposes of the long-arm statute, the situs of a "tortious act" is the place where "the last event takes place which is necessary to render the actor liable." *Ferrari v. District Court,* 185 Colo. 136, 522 P.2d 105 (1974), *quoting Gray v. American Radiator & Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961); *see D & D Fuller CATV Construction, Inc. v. Pace,* 780 P.2d 520 (Colo.1989) ("tortious conduct in a foreign state which causes injury in Colorado may be deemed to be an act committed in Colorado so as to satisfy the long-arm statute").

Here, plaintiff's cause of action is based on the allegation that defendants sent fraudulent misrepresentations into Colorado, through magazine advertisements and

telephone conversations with plaintiff, for the intended purpose of inducing him to travel to Nebraska and enter into a contract for the purchase of the automobile.

Although most of plaintiff's damages occurred in Nebraska, where he paid for the automobile and took possession, plaintiff's initial injury occurred when he relied on defendants' misrepresentations and incurred the expense of traveling to defendant's place of business to inspect the vehicle. *See Rose v. Franchetti*, 713 F.Supp. 1203 (N.D.Ill.1989). For this reason, defendants' deceptive solicitation of plaintiff may be deemed deliberate "tortious conduct within this state" sufficient to establish personal jurisdiction under the long-arm statute. *Rose v. Franchetti, supra; Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979); *Brainerd v. Governors of University of Alberta*, 873 F.2d 1257 (9th Cir.1989); *Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987).

As the United States Court of Appeals for the First Circuit observed in *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972):

"We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger.... Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."

## II.

■ Under the due process clause of the Fourteenth Amendment, a court may not make a binding judgment in personam against a nonresident defendant unless the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

In making the determination whether a nonresident defendant has sufficient minimum contacts with the forum state, the critical inquiry is whether the relationship among the defendant, the forum, and the litigation is such that the defendant "should reasonably foresee being haled into Court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In *D & D Fuller CATV Construction, Inc. v. Pace, supra*, our supreme court considered the nature of the due process analysis to be applied where a cause of action arises from the alleged commission of a tort by a nonresident:

"Frequently, the commission of a tort, in itself, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry. In such cases there is no need to further engage in a minimum contacts analysis, because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction.... In addition, a defendant can reasonably foresee being haled into court to answer for his tortious conduct."

Accordingly, under the test set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), "where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process." *D & D Fuller CATV Construction, Inc. v. Pace, supra*.

Here, plaintiff has alleged that defendants made deliberate, direct and indirect fraudulent misrepresentations for the purpose of inducing him to travel to Nebraska and enter into a contract for the purchase of a vehicle. Moreover, defendants allegedly sold the car to plaintiff with the

knowledge that it would be transported to and used in Colorado. Under these circumstances, it would not offend due process principles to subject defendants to suit in this state.

While there is contrary authority in other jurisdictions, *see Carothers v. Vogeler,* 148 Vt. 316, 532 A.2d 580 (1987), we are persuaded by *New Bern Pool & Supply Co. v. Graubart,* 94 N.C.App. 619, 381 S.E.2d 156 (1989), *aff'd,* 326 N.C. 480, 390 S.E.2d 137 (1990), and *Marvel v. Pennington GMC, Inc.,* 98 Or.App. 612, 780 P.2d 760 (1989); and *D & D Fuller CATV Construction Inc. v. Pace, supra,* that the service was proper here.

As stated in *New Bern Pool & Supply Co. v. Graubart, supra:*

> "Defendant's intentional acts in this case are such that defendant can be said to have purposely availed himself of the privilege of doing business in the state of North Carolina to the extent that defendant should have reasonably anticipated being haled into court in this State. We conclude that defendant had sufficient minimum contacts with the State of North Carolina so as to allow the trial court to exert personal jurisdiction over him and that the maintenance of this action in North Carolina does not offend traditional notions of fair play and substantial justice."

This case should not be confused with *Vickery v. Amarillo Freightliner Sales, Inc.,* 695 P.2d 306 (Colo.App.1984). Although the facts appear to be similar as to the purchase of the vehicle, our court distinguished the issues there by stating:

> "Here, the alleged tort relates not to the condition of the truck but rather to the circumstances surrounding the creation of the contract and its terms. The operative fact which is material to the tort is not the fact that there was a breakdown but rather was the defendant's refusal to pay the cost of repairing the truck. Thus, no significance attaches to the place where the breakdown occurred. We therefore find no merit in plaintiffs' argument that the tort was committed here because the truck broke down in Colorado."

The tort in the case before us was allegedly committed by the mailing of advertisements to the plaintiff and the telephone conversations which allegedly included false representations and fraudulent claims which plaintiff claims violated our common and statutory law. He further alleged that he relied on them in this state to his detriment, before traveling to Nebraska.

The judgment of dismissal is reversed, and the cause is remanded to the trial court with directions to reinstate the complaint.

DUBOFSKY, J., concurs.

CRISWELL, J., dissents.

Judge CRISWELL dissenting:

I respectfully dissent because, like the trial court, I am convinced that the Colorado "long-arm" statute does not authorize, and the due process clause of the Fourteenth Amendment positively prohibits, this state's exercise of jurisdiction over the defendants in this case.

I first note that, although plaintiff had the burden of demonstrating that the service of process upon defendants was sufficient under Colorado's long-arm statute, *D & D Fuller CATV Construction, Inc. v. Pace,* 780 P.2d 520 (Colo.1989), he presented not an iota of evidence upon the issue. He rested, instead, solely upon the allegations of his complaint. While the allegations of the complaint may be looked to for this purpose, those allegations do not disclose many facts that might well be deemed important.

Thus, there is no information in this record disclosing where the national magazines in which defendants advertised are published, nor is there any description of the method used by the publishers to distribute these materials in Colorado, nor any evidence as to defendants' knowledge of the publishers' distribution markets or practices.

Further, while plaintiff's complaint stated that he "traveled to Omaha, Nebraska to meet with" defendants, his complaint contains no express allegation that this

travel was in reliance upon any representation made by defendants. Indeed, while he seeks to recover "damages relating to the original purchase price of the vehicle, repairs to the vehicle, loss of benefit of the bargain and other consequential damages," his complaint contains no specific request to be reimbursed for any travel expenses.

Hence, we must assess plaintiff's claim of jurisdiction in light of his evidentiary showing.

## I.

Plaintiff's complaint contains four claims for relief, plus an annexed request for exemplary damages. Three of these claims (fraud, concealment, and deceptive trade practices) allege intentional torts; one (negligent misrepresentation) is based upon simple negligence.

Thus, in the instance of each claim, plaintiff must rely upon § 13–1–124(1)(b), C.R.S. (1987 Repl.Vol. 6A), which allows service upon a non-resident if the claim arises from the commission of a "tortious act" within this state; no other provision would authorize such service.

Under this statute, the term "tortious act" means the "total act" of a completed tort, including "the cause and effect through the continuum of time." *Vandermee v. District Court*, 164 Colo. 117, 433 P.2d 335 (1967). There exists no tortious act, therefore, until a defendant's wrongful action has caused injury, thereby completing the tort. Thus, it is the situs where injury occurs that is the location of the "tortious act." *Vandermee v. District Court, supra.*

Here, none of the torts alleged could have occurred until plaintiff relied upon defendants' statements to his detriment and suffered injury thereby. Further, both the majority and I appear to agree that the location where plaintiff suffered the primary injury for which he seeks to collect damages was in Nebraska, where he paid for the vehicle, acquired title thereto, and accepted delivery.

The majority insist, however, that plaintiff also suffered "injury" for purposes of

the long-arm statute, *i.e.*, that defendants' tort was complete, the moment he left his home in Colorado to travel to Nebraska. The injury occurring in Colorado presumably consisted of the cost to plaintiff of traveling from his home to the Colorado state line. And, it is with this conclusion that I disagree.

I concede that the federal district judge in *Rose v. Franchetti*, 713 F.Supp. 1203 (N.D.Ill.1989) gave birth to such a concept. That opinion, however, is unpersuasive to me.

Plaintiff's specific allegations are that he "took action [in reliance upon defendants' statements] by paying the defendants nine thousand dollars ($9,000) for the purchase of the vehicle." I would take plaintiff at his word. And, since the act of reliance that plaintiff has alleged in his complaint took place in Nebraska, I would conclude that no tortious act occurred in Colorado.

## II.

Even if I were to assume that the Colorado statute can be read broadly enough to apply here, nevertheless, I am convinced that the assertion of jurisdiction would offend against the due process requirements of the Fourteenth Amendment.

In order to determine whether a defendant has had sufficient "minimum contacts" with Colorado under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), so as to enable the courts of this state to assert in personam jurisdiction over him, it is necessary to apply a three-part test. Such jurisdiction may be asserted only if (1) the defendant has "purposely availed" himself of acting within this state or of causing important consequences here, (2) the claim asserted against him arises from his activities or consequences occurring in this state, and (3) those activities or consequences are sufficiently substantial so as to make it reasonable to exercise judicial power over him. *Van Schaack & Co. v. District Court*, 189 Colo. 145, 538 P.2d 425 (1975). *See also Mr. Steak, Inc. v. District Court*, 194 Colo. 519, 574 P.2d 95 (1978); *Trans–Continent Refrigerator Co. v. A Little Bit*

*of Sweden, Inc.,* 658 P.2d 271 (Colo.App. 1982).

Under this test, it is clear that the sale in another state of a commodity which is then brought to this state does not, by reason of that fact alone, give jurisdiction over defendant with respect to a claim relating to that commodity. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Granite States Volkswagen, Inc. v. District Court,* 177 Colo. 42, 492 P.2d 624 (1972). *See also Fleet Leasing, Inc. v. District Court,* 649 P.2d 1074 (Colo.1982) (repair of vehicle in another state).

In employing that three-part test here, the record shows that there are only two acts that can be relied upon to demonstrate that defendants "purposely availed" themselves of the benefits or protections of Colorado law. *See Trans–Continent Refrigerator Co. v. A Bit of Sweden, Inc., supra.* They advertised in magazines which are claimed to be circulated nationally. Later, they engaged in a series of interstate telephone conversations that were initiated by plaintiff. Except for these two actions, the record is clear that defendants conducted all of their business with plaintiff within the boundaries of Nebraska, where plaintiff first inspected the vehicle, paid the purchase price therefor in cash, received title to the vehicle, and took delivery thereof.

On strikingly similar facts, our supreme court has held that the requirements of due process prohibit the judiciary's assertion of in personam jurisdiction. In *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (Colo.1968), relied upon by the trial court, the Illinois defendant advertised in three nationally circulated magazines and, in addition, had several telephone conversations which were initiated by the Colorado plaintiff. As a result, plaintiff contracted with defendant for an African safari. Claiming that defendant breached that contract, plaintiff instituted suit in this state.

The supreme court issued its writ prohibiting the trial court from asserting jurisdiction over the non-resident defendant. It noted that "interstate telephone conversations ... [do not] constitute acts by which the [defendant] purposely availed himself of the privilege of conducting activities within Colorado...." Further, with respect to national advertising, the court said this:

"Advertising in national magazines distributed within the forum state does not alone constitute a transaction of business within that state. See *Bolger v. Dial–A–Style Leasing Corporation,* [159 Colo. 44, 409 P.2d 517 (1966)]. If the rule were to the contrary, advertisers in any nationally distributed magazine would be subject to the jurisdiction of each of the states in which the magazines are distributed. *Insull v. N.Y. World–Telegram Corp,* 273 F.2d 166 (7th Cir.1959). Such a contact is simply too tenuous upon which to found a claim of jurisdiction. See *Erlanger Mills, Inc. v. Cohoes Fibre Mills,* 239 F.2d 502 (4th Cir.1956).

. . . .

Under all of the circumstances disclosed by the record in this case, it would be a mere fiction to hold that petitioner had minimal contacts in Colorado sufficient to meet the due process test so as to enable a Colorado court to exercise 'long-arm' jurisdiction over him." (emphasis supplied).

*See also Pickens v. Hess,* 573 F.2d 380 (6th Cir.1978); *Carothers v. Vogeler,* 148 Vt. 316, 532 A.2d 580 (1987); *Kleinfeld v. Link,* 9 Ohio App.3d 29, 457 N.E.2d 1187 (1983).

Because I consider myself bound by the supreme court's conclusion in *Safari Outfitters v. Superior Court, supra,* I would follow its dictates, even if the conclusions in the federal decisions relied upon by the majority were inconsistent with *Safari Outfitters.* However, those cases are not inconsistent with our supreme court's conclusion; in both such federal cases, defendant's contacts with the forum state went beyond mere advertisements in national magazines.

In *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661 (1st Cir.1972), the false represen-

tations were contained in correspondence sent by defendant personally to plaintiff in the forum state and in a check sent to plaintiff there, pursuant to a contract calling for payments to be made in that state.

In *Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kans.1979), defendant not only advertised in a national magazine, but after the sale of the advertised horse, arranged for the issuance of a certificate attesting to the horse's soundness so as to comply with the substantive law of the forum state.

Finally, I do not view anything contained within the supreme court's opinion in *D & D Fuller CATV Construction, Inc. v. Pace, supra,* to be inconsistent with *Safari Outfitters* or supportive of the Colorado courts' jurisdiction in this case. The defendants in *D & D Fuller* were the grandparents of a child whose custody had been awarded by the Colorado courts to the plaintiff mother, a Colorado resident, and the grandparents' wholly-owned corporation. Plaintiff's allegations were that defendants conspired with the child's father to kidnap the child, to have the child removed from Colorado, and to prevent the plaintiff from contacting the child, all in violation of the order of the Colorado court.

Noting that these actions constituted the commission of a crime in Colorado, the supreme court concluded that each case must be analyzed on an ad hoc basis to determine whether the assertion of jurisdiction would meet due process requirements:

> "Frequently, the commission of a tort, in itself, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry. In such cases there is no need to further engage in a minimum contacts analysis, because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction.... In addition, a defendant can reasonably foresee being haled into court to answer for his tortious conduct. *In other cases, even if an injury is sustained in the forum state, the defendant's tortious acts may be so remote as to require a closer nexus between the defendant and the state."* (emphasis supplied)

In sum, it is my view that, even if it could be said that plaintiff sustained an injury in this state as a result of the defendants' tortious actions, those acts had such a remote connection with Colorado as not to provide a proper foundation for the assertion of jurisdiction over them. Hence, I would affirm the trial court's judgment.