[Cite as *In re G.V.W.*, 2025-Ohio-5639.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | |
|---|---|
| IN RE G.V.W. | : |
| A Minor Child | : |
| | No. 115130 |
| [Appeal by Mother, A.W.] | : |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 18, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA24700290

---

***Appearances:***

Zashin Law, LLC, Amy M. Keating, and Douglas R. Henry,
*for appellant*.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiff-appellant A.W. ("Mother"), mother of minor child, G.V.W. (dob 10/17/2023), appeals from the April 23, 2025 judgment entry that found the juvenile court did not have personal jurisdiction over A.L.W., the alleged father of G.V.W., and accordingly dismissed without prejudice Mother's complaint to

establish child support and denied Mother's related motions. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} As a preliminary matter, we note that A.L.W. failed to file an appellee brief. Therefore, pursuant to App.R. 18(C), this "court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶ 3} In November 2022, Mother and A.L.W. commenced an exclusive, long-distance relationship, with Mother residing and working in Cleveland, Ohio, and A.L.W. living and working in Miami, Florida. Neither Mother nor A.L.W. had children, and they discussed and embraced the possibility of conceiving a child. During their relationship, Mother and A.L.W. traveled to Nashville, Tennessee, where they engaged in sexual relations. On February 2, 2023, Mother determined, with an at-home pregnancy test, that she was pregnant. Mother testified that the child was conceived in Nashville. Mother further testified that A.L.W. was excited about the pregnancy and committed to attending all of Mother's pregnancy-related doctor's appointments.

{¶ 4} A.L.W. accompanied Mother to the first ultrasound appointment in February 2023. Mother did not testify that she and A.L.W. attended any additional doctors' appointments together, although a timeline written by Mother and introduced at the default hearing indicated A.L.W. visited Mother in Cleveland from

March 2, 2023, through March 5, 2023, from March 26, 2023, through March 29, 2023, and on April 13, 2023.

{¶ 5} In April 2023, A.L.W. and Mother participated in genetic testing to identify potential health risks to their unborn child and the relationship terminated later that month. The couple did not communicate again until July 2023, when Mother contacted A.L.W. According to Mother, A.L.W. then sent a handwritten letter stating his interest in coparenting and the couple communicated, through text messages, about coparenting. During that time, A.L.W. insisted he wanted to "establish full parental rights." Tr. 23.

{¶ 6} Mother testified that the legal nature of the texts between her and A.L.W. made her nervous and caused her to retain legal counsel in August 2023. Around the same time, A.L.W. retained a Cincinnati, Ohio attorney — ("Cincinnati attorney") — who communicated with Mother's attorney. Mother and A.L.W. stopped texting one another in September 2023.

{¶ 7} G.V.W. was born on October 17, 2023; A.L.W. was not present for her birth. Following the child's birth, counsel for both parties exchanged emails that discussed coparenting and visitation and the Cincinnati attorney provided Mother's attorney with A.L.W.'s W-2 forms. A.L.W. planned twice to travel to Cleveland with his mother to meet G.V.W., but he cancelled both visits at the last minute. Mother was informed after the second cancelled visit that A.L.W. intended to retain local counsel, yet he never did so. The Cincinnati attorney stopped responding to Mother's counsel in November 2023.

{¶ 8} According to Mother, A.L.W. never denied nor questioned his paternity. Additionally, Mother testified that A.L.W. asked her, through their attorneys, to change the baby's last name so that it reflected A.L.W.'s last name.

{¶ 9} On January 11, 2024, Mother filed with the juvenile court a complaint to establish child support, a motion to establish paternity via genetic testing, a motion for past care/retroactive child support and further equitable relief, and a motion to show cause.[1] The pleadings were sent to A.L.W. in Miami, Florida by certified mail, and the pleadings were marked "unclaimed" and returned. Service of the complaint was perfected by ordinary mail sent on March 22, 2024.

{¶ 10} On July 18, 2024, the court issued a pretrial order requiring A.L.W. to submit to genetic testing in Miami, Florida. A.L.W. did not comply with that order. Mother's counsel issued a subpoena to A.L.W.'s employer in November 2024 and received information on his salary, position, and sources of income.

{¶ 11} The juvenile court conducted a default judgment hearing on December 12, 2024. Prior notice was sent by mail to A.L.W. at his last known address listed in the court file and to counsel of record by email. No notice was returned undelivered.

{¶ 12} The purpose of the default hearing was to (1) provide sufficient evidence so that the juvenile court could establish A.L.W.'s parentage of G.V.W. by default; (2) establish child support, including income, expenses, retroactive child

---

[1] Mother subsequently withdrew her motion to show cause.

support, medical expenses, and childcare expenses; and (3) determine attorney fees owing to Mother.

{¶ 13} A.L.W. had not filed an answer to the complaint and was not present for the default hearing. An assistant prosecuting attorney ("APA") attended the hearing on behalf of the Office of Child Support Services ("OCSS"). Mother testified to the facts as stated above, and Mother's attorney testified about the attorney fees incurred by Mother. Mother also testified that as of the default hearing, A.L.W. had not contributed to any of G.V.W.'s prenatal or postnatal expenses. At the close of the evidence, the APA objected to the court finding paternity based upon a default hearing because (1) the alleged father, A.L.W., was served with the complaint by ordinary mail, and (2) notice of the default hearing was sent to A.L.W. at the same address where Mother sent a show cause motion and service of the show cause motion had failed. At the hearing, the juvenile court ordered the APA to submit a brief detailing the relevant legal issues and Mother to file a responsive pleading.

{¶ 14} Before the APA submitted the requested brief, the magistrate issued an order on January 3, 2025, vacating the court's oral order for briefs and stating the ordinary mail service to the out-of-state defendant was appropriate. The order also found that because G.V.W. was conceived outside the State of Ohio, the court did not have personal jurisdiction over A.L.W., a nonresident defendant, pursuant to R.C. 3111.06(B). The magistrate further found there was insufficient time for leave to perfect service upon the defendant in accordance with Civ.R. 3. Absent

personal jurisdiction, the magistrate dismissed the complaint, without prejudice, and denied the outstanding motions.

{¶ 15} On January 17, 2025, Mother filed an objection to the magistrate's decision, and on February 24, 2025, Mother filed a supplemental objection. The juvenile court issued a judgment entry on April 23, 2025, finding that the court did not have jurisdiction over A.L.W. pursuant to R.C. 3111.06(B) because G.V.W. was not conceived in Ohio. The juvenile court also stated:

> Mother objects to the Magistrate's Decision dismissing this matter pursuant to ORC 3111.06(B) for lack of personal jurisdiction and argues that personal jurisdiction must be raised by the Defendant and not by the Court on its own motion. In support of her argument, Mother cites to Civ.R. 12(H)(1), *Preferred Capital, Inc. v Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, *Brislin v. Alvert*, 2014-Ohio-3406, and *Lella v. Lella*, 1997 Ohio App. LEXIS 5585.
>
> Additionally, in Mother's Supplemental Objection, she cites to R.C. 3115.201. Chapter 3115 governs cases filed under the Uniform Interstate Family Support Act of 2008, which this matter was not filed under. Additionally, the Magistrate did not dismiss this matter pursuant to Chapter 3115.
>
> This Court finds that *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, is not applicable here as it dealt with the enforceability of a forum selection clause.
>
> In *Brislin v. Alvert*, 2014-Ohio-3406, the Ninth Appellate District held that the defense of lack of personal jurisdiction is waived if it was omitted from either a Rule 12(G) Motion or a responsive pleading. In *Brislin*, the Defendant filed a Motion to Dismiss arguing improper venue and failed to argue a lack of personal jurisdiction.
>
> In *Lella v. Lella*, 1997 Ohio App. LEXIS 5585, the Twelfth Appellate District found that the appellant/defendant availed himself to the jurisdiction of an Ohio court pursuant to Civ.R. 4.3 as he was active in settlement negotiations for the underlying divorce complaint in Ohio

and he never raised personal jurisdiction during the pendency of the underlying action.

In the case at hand, [A.L.W.] did not submit himself to the jurisdiction of the Court; he did not appear in Court, he did not have an attorney appear in Court on his behalf, nor did he file anything in response to Mother's Motion for Genetic testing and Complaint to Establish Support. Therefore, [A.L.W.] did not waive his defense of lack of personal jurisdiction.

In *Massey-Norton v. Trammel*, 61 Ohio App.3d 394, 572 N.E.2d 821, the Tenth Appellate District affirmed the trial court's dismissal of mother's paternity action for lack of personal jurisdiction finding that defendant's conduct in or contacts in this state did not fall within any sections set forth in Civ.R. 4.3, R.C. 2307.382, or 3111.06.

Additionally, in *Gaisford v. Swanson*, 83 Ohio App.3d 457, 615 N.E.2d 266, the Third Appellate District found that the trial court erred, pursuant to R.C. 2307.38[2], Civ.R. 4.3(A), or R.C. 311[1].06(B), in finding that it had personal jurisdiction over the father. In *Gaisford*, the trial court found that conception occurred in Texas, not Ohio, which prohibited the Court from exercising personal jurisdiction over the father.

In the case at hand, Mother further argues that this Court has personal jurisdiction over [A.L.W.] alleging that he made multiple visits to Ohio and that he was represented by an Ohio Attorney. This Court's review of the transcript shows that [A.L.W.] was only in Ohio one time, for the first ultrasound. While Mother's Exhibit M-7 indicates that Father may have had an Ohio attorney, the representation occurred and ended before the Complaint to Establish Support and Motion for Genetic Testing were filed. Therefore, this Court finds that it does not have personal jurisdiction over [A.L.W.] pursuant to Civ.R. 4.3 and R.C. 2307.382 as none of the instances giving rise to personal jurisdiction are applicable here.

Based upon this Court's independent review of the court file, the Magistrate's Decision, the transcripts of the hearing, and the Objections, the Court finds the Objections are not well-taken. The Court affirms, approves and adopts said Decision and overrules said Objections.

April 23, 2025 judgment entry.

{¶ 16} On July 14, 2025, Mother filed a notice of appeal, and she now presents three assignments of error:

Assignment of Error I: The trial court erred as a matter of law in finding that A.L.W. did not submit himself to the court's exercise of personal jurisdiction pursuant to Ohio Revised Code Section 2307.382 and Civil Rule 4.3.

Assignment of Error II: The trial court erred as a matter of law in finding that A.L.W. did not waive his defense of lack of personal jurisdiction.

Assignment of Error III: The trial court committed reversible error by raising a defense of lack of personal jurisdiction, sua sponte, on behalf of A.L.W.

**Legal Analysis**

**A. Personal Jurisdiction**

{¶ 17} "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27. The question raised in Mother's first assignment of error is whether the juvenile court had personal jurisdiction over A.L.W. in Mother's paternity action.

{¶ 18} In a paternity action, personal jurisdiction may be established if the child was conceived in Ohio because "sexual intercourse in this state expressly constitutes a submission to jurisdiction." *State ex rel. Stone v. Court of Common Pleas, Juvenile Div.*, 14 Ohio St.3d 32, 34 (1984), *see also* R.C. 3111.06(B) ("A person who has sexual intercourse in [Ohio] submits to the jurisdiction of the courts of this state as to [a paternity] action . . . with respect to a child who may have been conceived by that act of intercourse."). A court may also exercise personal

jurisdiction over a nonresident whose actions satisfy the rigors of R.C. 2307.382(A)(1)-(9), Ohio's long-arm statute. *See Kauffman Racing Equip., L.L.C.* at ¶ 28-29; *Fraley v. Estate of Oeding*, 2014-Ohio-452, ¶ 12; R.C. 2307.382.

{¶ 19} The record demonstrates G.V.W. was not conceived in Ohio, and, accordingly, R.C. 3111.06(B) is inapplicable in this matter. Thus, we assess whether the juvenile court had personal jurisdiction over A.L.W. under Ohio's long-arm statute.[2]

{¶ 20} Application of the long-arm statute is a two-step inquiry. First, a court must determine that R.C. 2307.382 — which authorizes a court to exercise personal jurisdiction over a nonresident defendant — and Civ.R. 4.3 — which provides for service of process to effectuate jurisdiction — conferred jurisdiction over the nonresident defendant. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 75 (1990). Once it has been shown that the nonresident fulfilled one of the specified circumstances found in R.C. 2307.382 and Civ.R. 4.3

---

[2] Although we analyze the juvenile court's personal jurisdiction over A.L.W. under R.C. 2307.382(A), Ohio's long-arm statute, it is debatable whether that statute should apply in a case when the sole issue is parentage. The long-arm statute requires that a nonresident commit at least one of the specifically identified actions in the state giving rise to the cause of action. None of the activities and/or Ohio contacts set forth in R.C. 2307.382(A) relate to parentage, and this case is solely about the determination of parentage. Parentage can only arise from conduct leading to conception. The Ohio legislature has defined in R.C. 3111.06(B) and 3115.201 the circumstances where personal jurisdiction can be exercised over a nonresident in a parentage action, suggesting these are the appropriate tests to establish personal jurisdiction in parentage cases rather than through application of the long-arm statute. Here, we analyze personal jurisdiction under the long-arm statute because no Ohio court has specifically held that Ohio's long-arm statute is inapplicable in a parentage case and there are multiple parentage cases where courts have analyzed personal jurisdiction over a nonresident under R.C. 2307.382(A).

has been satisfied, the exercise of long-arm jurisdiction requires an additional showing that the nonresident had sufficient minimum contacts with Ohio to satisfy due-process requirements. *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 8 Ohio App.3d 236 (10th Dist. 1982), paragraph one of the syllabus. Ohio courts cannot exercise personal jurisdiction over a nonresident if doing so would violate the individual's constitutional right to due process.

{¶ 21} Regarding due process,

[t]he United States Supreme Court noted in *Internatl. Shoe Co. v. Washington* that due process is satisfied if the defendant has "minimum contacts" with the forum state such that the maintenance of the suit does not offend "'traditional notions of fair play and substantial justice.'" [*Id.*](1945), 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278. The minimum-contacts requirement is met when a nonresident defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State." *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

*Kauffman Racing Equip., L.L.C.*, 2010-Ohio-2551 at ¶ 45. Before considering the due-process issues, we must initially assess whether Mother established compliance with R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1).

{¶ 22} R.C. 2307.382(A)(1) reads:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state.

Civ.R. 4.3(A)(1) states:

(A) Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this

state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state.

{¶ 23} R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) allow a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process when the cause of action arises from the nonresident's "transacting any business" in Ohio. The Ohio Supreme Court determined the word "transact," in the context of Ohio's long-arm statute, means "to prosecute negotiations; to carry on business; to have dealings." *Kentucky Oaks Mall Co.*, 53 Ohio St.3d at 75. "The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *. (Emphasis deleted.)" *Id.* Because the term "transacting any business" is so broad, cases based upon R.C. 2307.382(A)(1) are resolved on "'highly particularized fact situations, thus rendering any generalization unwarranted.'" *U.S. Sprint Communications Co. v. Mr. K's Foods*, 1994-Ohio-504, ¶ 14, quoting 22 Ohio Jur.3d, Courts and Judges, § 280, at 430 (1980).

{¶ 24} Both R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) require that A.L.W.'s transacting business in Ohio "caused an event to occur out of which the claim that is the subject of the complaint arose." Civ.R. 4.3. Mother relies on *Lella v. Lella*, 1997

Ohio App. LEXIS 5585 (12th Dist. Dec. 15, 1997), in support of her allegation that the juvenile court has personal jurisdiction over A.L.W. We find *Lella* inapplicable to the instant case.

{¶ 25} *Lella* was not a parentage action, such as the instant matter, but arose from a divorce complaint. In *Lella*, Husband and Wife married in New Jersey in 1986 and lived in California from February 1986 through May 1987; Wife moved to Ohio while Husband completed his naval service in California. Both parties moved to New Jersey in 1987 where they remained until 1995, when they executed an interim property settlement agreement ("interim agreement"), and Wife and the couple's children moved to Ohio. The interim agreement contemplated Wife and children residing in Ohio, Husband submitting child-support payments to Ohio, and Husband conducting visitation with the children in Ohio. Wife filed for divorce in Ohio in 1996. Husband retained counsel in New Jersey, and the parties' attorneys corresponded about the divorce decree; Husband did not disclaim the Ohio court's personal jurisdiction over him. Husband did not appear for the final divorce hearing scheduled in Ohio; the trial court proceeded in his absence and journalized a final divorce decree that incorporated child support, custody, and division of property.[3]

{¶ 26} In *Lella*, Husband did not file a timely appeal but filed a motion for relief from judgment, arguing for the first time that the trial court lacked personal jurisdiction over him to enter the final judgment. The trial court determined

---

[3] Husband did not participate in the final hearing because his car broke down on the highway, and he was unable to arrive at court on time.

Husband availed himself of Ohio jurisdiction because the terms of the interim agreement required him to pay child support in Ohio and maintain ongoing visitation with the children in Ohio. Also, Husband participated in active settlement negotiations in Ohio. On appeal, the *Lella* Court referenced Civ.R. 4.3(A)(1) and stated that the above-described acts by Husband demonstrated sufficient minimum contacts within the State of Ohio. In other words, the trial court found Husband had sufficient business transactions to satisfy personal jurisdiction by an Ohio court.

{¶ 27} Here, A.L.W. did not execute an agreement with Mother; he did not agree to a coparenting plan, child-support payments, or visitation with G.V.W. in Ohio; and he did not participate in paternity proceedings in Ohio. A.L.W.'s decision to retain an attorney for a few months to discuss possible arrangements with Mother about G.V.W. did not compare to the "business transactions" conducted by the Husband in *Lella,* 1997 Ohio App. LEXIS 5585 (12th Dist. Dec. 15, 1997). Further, the Husband in *Lella* never raised the issue of personal jurisdiction until the case was appealed whereas A.L.W. did not answer the paternity complaint and never submitted to the court's jurisdiction.

{¶ 28} In addition to *Lella*, we analyze additional paternity actions that attempted to establish personal jurisdiction against a putative father because he transacted business in the State of Ohio.

{¶ 29} The Fourth Appellate District found a nonresident father in a paternity action "transacted 'the business' of being a father to his son" by visiting his son in Ohio for an unspecified number of visits, sending a birthday gift to his son in

Ohio, and mailing support money to Ohio. *Yarnick v. Stegkamper*, 1985 Ohio App. LEXIS 5965, *2-3 (4th Dist. Mar. 6, 1985). The application of *Yarnick,* a case with no precedential effect on this court, has been denied in both *Baker v. Baker*, 1989 Ohio App. LEXIS 269 (10th Dist. Jan. 19, 1989), and *Massey-Norton v. Trammel*, 61 Ohio App.3d 394 (10th Dist. 1989).

{¶ 30} In *Baker*, Mother filed a paternity action and sought personal jurisdiction over the alleged Father. Relying on *Yarnick*, Mother unsuccessfully argued that Father's payment of birthing expenses incurred in Ohio, payment of monthly child-support payments to Ohio, and visitation with the couple's child in Ohio constituted transacting business to establish long-arm jurisdiction. The *Baker* Court stated:

> The term "business," even if given its most liberal construction, cannot be construed to include defendant's conduct in light of the provisions of Civ. R. 4.3(A)(8). That section specifically provides for the type of conduct at issue in this case. However, because there is no allegation that defendant lived in a marital relationship with plaintiff in this state, plaintiff cannot avail herself of subsection (8).

*Baker* at 5-6.[4] The *Baker* Court concluded that Father's conduct did not fall within any of the enumerated sections of Civ.R. 4.3 or R.C. 2307.382. Therefore, it was

---

[4]A claim under Civ.R. 4.3(8) arises from a party who lived in a marital relationship within Ohio:

(A) When service permitted. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out

unnecessary for the court to consider the sufficiency of Father's contacts with the State for purposes of due process, and the *Baker* court affirmed the trial court's dismissal of the complaint for lack of personal jurisdiction.

{¶ 31} In *Massey-Norton*, the Tenth Appellate District affirmed the dismissal of a mother's paternity action because of lack of personal jurisdiction. Mother argued the Ohio trial court had personal jurisdiction over Father, a resident of Florida, pursuant to R.C. 2307.382(A)(1).[5] Specifically, Mother argued that Father transacted business in Ohio, satisfying the long-arm statute, when he (1) transported Mother from Florida to Ohio where Mother gave birth to their child, (2) sent money to Mother in Ohio for prenatal expenses, (3) sent cards, gifts, and money to Mother and child in Ohio, (4) sent regular support payments to Mother in Ohio, and (5) visited the child in Ohio.

{¶ 32} The *Massey-Norton* Court, relying on *Baker*, 1989 Ohio App. LEXIS 269 (10th Dist. Jan. 19, 1989)*,* expressly rejected *Yarnick,* 1985 Ohio App. LEXIS

---

of which the claim that is the subject of the complaint arose, from the person's:

. . .

(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state.

Civ. R. 4.3.

[5] In *Massey-Norton*, Mother also alleged personal jurisdiction pursuant to R.C. 2307.382(A)(3), but we will not address those allegations because they are not relevant to the instant case.

5965 (4th Dist.), and found Father's conduct could not be characterized as transacting business within the State of Ohio. The *Massey-Norton* Court stated that Civ.R. 4.3(8) addresses child-support payments and, therefore, child-support payments could not also constitute "business transactions" as addressed in Civ.R. 4.3(A)(1). Mother could not rely on child-support payments to demonstrate transacting business under Civ.R. 4.3(A)(1) and, therefore, the trial court lacked personal jurisdiction over Father.

{¶ 33} A mother also failed to establish personal jurisdiction pursuant to R.C. 2307.382(A)(1) in *Hudgins v. Hudgins*, 80 Ohio App.3d 707 (3d Dist. 1992), a child-support action. The trial court found Father was subject to personal jurisdiction in Ohio because his child and ex-wife, the beneficiaries of his child-support payments, resided in Ohio. On appeal, the *Hudgins* Court considered the following factors:

> "(1) Established activity by nonresident in the forum state;
> (2) Nonresident takes advantage of privileges and benefits of forum state;
> (3) Nonresident solicits business through agents or advertising reasonably calculated to reach the forum state;
> (4) It is foreseeable that nonresident will litigate in the forum state; and
> (5) Convenience to the litigants and fairness of requiring nonresident to come to the forum state."

*Hudgins* at 716, quoting *Kleinfeld v. Link*, 9 Ohio App.3d 29, 30-31 (3d Dist. 1983). The court of appeals determined that Father's entry into Ohio several times a year at his employer's request was not sufficient contacts to establish personal jurisdiction. The court further stated, "[W]e find that the exercise of parental rights

and the performance of parental responsibilities do not constitute the purposeful transaction of 'business' activities." *Hudgins.*

{¶ 34} A review of the above-cited case law demonstrates that Mother did not establish personal jurisdiction of the juvenile court over A.L.W. Both the *Baker* and *Massey-North* Courts found no personal jurisdiction over an alleged father in a paternity action under R.C. 2307.382(A)(1) because the alleged father's proposed actions, including visitation with his child and providing support money or gifts, could not be considered "business transactions." The holding in *Yarnick* is an outlier and does not impact our decision.

{¶ 35} Here, Mother alleges the proposed actions of A.L.W. that support his "business transactions" include multiple visits to Cleveland, participation in prenatal genetic testing, and the retention of an Ohio lawyer who communicated with Mother's counsel about coparenting, visitation, and financials prior to the commencement of Mother's paternity action. While Mother argues in her appellate brief that A.L.W. made multiple visits to Ohio, the record reflects testimony about a single visit — A.L.W.'s presence at the first ultrasound. Further, we agree with the *Baker* and *Massey-North* Courts that visitation and prenatal genetic testing are not "business transactions" contemplated by R.C. 2307.382(A)(1). Similarly, the alleged conversations and text messages that Mother and A.L.W. had about coparenting were not "business transactions."

{¶ 36} The only act by A.L.W. that could be considered a "business transaction" was his retention of Ohio legal counsel. A.L.W. retained the Cincinnati

attorney who communicated with Mother's attorney about coparenting and visitation. After G.V.W.'s birth, the Cincinnati attorney provided copies of A.L.W.'s W-2 forms and arranged for A.L.W. and his mother to visit G.V.W., although those visits were cancelled at the last minute. After G.V.W.'s birth, A.L.W. allegedly informed Mother that he would secure local counsel but he never did so. The Cincinnati attorney stopped responding to Mother's attorney in November 2024, several months prior to Mother filing the underlying complaint, and never filed any pleadings on behalf of A.L.W. Applying the factors considered by the *Hudgins* Court, A.L.W. retained Ohio counsel on his own volition but the record does not indicate A.L.W. experienced benefits from Ohio, solicited business in Ohio, was likely to litigate in Ohio, or that it was convenient for A.L.W. to come to Ohio.

{¶ 37} Based upon the foregoing, we find that Mother did not establish the juvenile court had personal jurisdiction over A.L.W. because she did not satisfy the requirements of R.C. 2307.382(A)(1). Accordingly, Mother's first assignment of error is overruled.

## B. Waiver of Lack of Personal Jurisdiction

{¶ 38} In her second assignment of error, Mother argues that the trial court erred when it found A.L.W. did not waive his lack-of-personal-jurisdiction defense.

{¶ 39} "A court acquires personal jurisdiction over a defendant either by 'service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction

of the court.'" *Brislin v. Albert*, 2014-Ohio-3406, ¶ 5 (9th Dist.), quoting *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984).

{¶ 40} In defense of his or her claim, a defendant may allege the trial court lacks personal jurisdiction. According to Civ.R. 12(H)(1), a defense of lack of personal jurisdiction is waived "(a) if omitted from a motion in the circumstances described in subdivision (G), or (b) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course."

{¶ 41} A defendant must generally object to the lack of personal jurisdiction either in an answer or in a motion filed prior to the filing of an answer. *State ex rel. DeWine v. 9150 Group L.P.*, 2012-Ohio-3339, ¶ 6 (9th Dist.), citing *Franklin v. Franklin*, 5 Ohio App.3d 74, 75-76 (7th Dist. 1981). "However, if the defendant does not appear in the action, the defense is not waived for failing to object." *State ex rel. DeWine*, citing *Maryhew* at 156-159, and *Mtge. Lenders Network USA, Inc. v. Riggins*, 2006-Ohio-3292 (9th Dist.); *see also Med Express v. Univ. of Colo. Denver*, 2015-Ohio-144, ¶ 11 (9th Dist.) ("The trial court erred in determining that the University's failure to appear constituted a waiver, i.e. a voluntary relinquishment of a known right, of the defense of personal jurisdiction."). "Civ.R. 12(H)(1) does not apply as a waiver where no appearance is made." *Infern-O-Therm Corp. v. Thickstun Bros. Equip. Co.*, 1991 Ohio App. LEXIS 2068, 4 (10th Dist. Apr. 16, 1991). *But see Snyder Computer Sys. v. Sayas Auto Sales*, 2009-Ohio-6759 (7th Dist.) (Defendant-appellee's failure to enter an appearance or file any

pleadings in response to plaintiff-appellant's complaint constituted a waiver of his defense of lack of personal jurisdiction.).

{¶ 42} A.L.W. did not submit himself to the jurisdiction of the court; he did not appear in court, he did not have an attorney appear in court on his behalf, nor did he file anything in response to Mother's complaint and related motions. Thus, the juvenile court did not err when it found that A.L.W. did not waive his defense of lack of personal jurisdiction.

{¶ 43} Mother's second assignment of error is overruled.

## C. Sua Sponte Order

{¶ 44} In her third assignment of error, Mother argues that the trial court erred when it sua sponte raised the defense of lack of personal jurisdiction.

{¶ 45} Once a party waives his or her lack-of-personal-jurisdiction defense, a trial court may not sua sponte raise that issue. *Snyder Computer Sys. v. Stives*, 2008-Ohio-1192, ¶ 16 (7th Dist.) ("[O]nce [a defendant] waived personal jurisdiction, it was procedurally incorrect for the trial court to raise it on its own motion."). Where the affirmative defense was not waived, a court may raise lack of personal jurisdiction on its own motion, although it is not required to do so. *Weiss, Inc. v. Pascal*, 2003-Ohio-5824 (8th Dist.), ¶ 7; *Mayiras v. Sunrise Motors Inc.*, 2017-Ohio-279, ¶ 8 (9th Dist.) ("Although this Court has held that a trial court may, in some instances, raise personal jurisdiction on its own, it has not determined that it must.").

{¶ 46} As determined under the second assignment of error, A.L.W. did not waive his defense of lack of personal jurisdiction and, therefore, the trial court could and did raise the defense of lack of personal jurisdiction.  For the foregoing reasons, Mother's third assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellant pay costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

MICHELLE J. SHEEHAN, P.J., and
ANITA LASTER MAYS, J., CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)